PEOPLE v MAHONE

Docket No. 299056. Submitted September 14, 2011, at Detroit. Decided
      September 27, 2011, at 9:00 a.m. Leave to appeal denied, 491 Mich
      908.

      Lance C. Mahone was convicted by a jury in the Oakland Circuit
      Court of two counts of first-degree criminal sexual conduct and
      one count of unarmed robbery. The charges resulted from an
      attack on the victim after an attempt by defendant and his
      codefendant (not a party to this appeal) to solicit the sexual
      services she advertised online. The victim refused to see two
      clients at the same time, and defendant and his codefendant
      initially left, but then later returned to rob and sexually assault
      her. Because defendant's theory was that the victim invented the
      sexual assault as vengeance for the theft and refusal to pay for
      services, credibility was an essential component of the case. The
      jury's composition was changed after jury deliberations had begun
      when the court, Martha D. Anderson, J., excused a juror from
      service and replaced her with an alternate. Defendant appealed.

            The Court of Appeals *held*:

            1. A police officer testified that the victim indicated that she
      screamed during the assault. The officer then testified that she
      confirmed with unidentified inhabitants of an adjacent hotel room
      that they heard a disturbance and screams during that time frame.
      The error was cured when the inadmissible hearsay was struck
      from the record and the jury was instructed to disregard it. Jurors
      are presumed to follow instructions, and it is presumed the
      instructions cure most errors. The prosecutor's comment during
      closing argument that the officer confirmed the disturbance was a
      fair response to defendant's explicit testimony that there was no
      screaming and, by implication, no disturbance.

            2. Under MRE 801(d)(1)(B), a prior consistent statement of a
      witness is admissible hearsay if (1) the declarant testifies at trial
      and is subject to cross-examination, (2) there was an express or
      implied charge of recent fabrication or improper influence or
      motive of the declarant's testimony, (3) the proponent offers a
      prior statement that is consistent with the declarant's challenged
      in-court testimony, and (4) the prior consistent statement was
      made before the supposed motive to falsify arose.

3. The testimony of the victim's coworker that the victim told the coworker before the assault (but after she refused to see the codefendants) that she had not been expecting two customers to arrive and would call the coworker back was consistent with the victim's testimony and properly admitted under MRE 801(d)(1)(B). Defendant's testimony that the victim admitted him and his codefendant without complaint implied that the victim had fabricated her testimony about the phone call. The telephone conversation occurred before the victim would have had a motive to falsify her testimony (that is, retaliation for the codefendants' refusal to pay and subsequent theft of the victim's cell phone and computer).

4. The police officer's hearsay testimony that the victim stated that a vodka bottle had been used in a threatening manner against her was not admissible under MRE 801(d)(1)(B), however, because the victim's motive to falsify would have occurred before the victim talked to the officer, not after. While a witness's nonresponsive answer to a question may work some mischief with a jury, it is not prejudicial unless it is egregious or not amenable to a curative instruction. The inadmissible hearsay was not prejudicial because the testimony was not egregious and could have been cured by an instruction had defense counsel requested one.

5. Statements made for the purpose of medical treatment are admissible under MRE 803(4) if they were reasonably necessary for diagnosis and treatment and the declarant had a self-interested motivation to be truthful in order to receive proper medical care, irrespective of whether the declarant sustained any immediately apparent physical injury. In cases of sexual assault, the injuries might be latent, such as contracting sexually transmitted diseases, or psychological in nature and thus not necessarily physically manifested at all. In these cases, a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment. The victim's statements made to a nurse during the rape examination were properly admitted under MRE 803(4).

6. If an alternate juror replaces a juror after deliberations begin, the court must instruct the jury to begin its deliberations anew. MCR 6.411. Defendant was not prejudiced by the substitution of an alternate juror because the alternate juror was properly instructed before his initial release from jury deliberations not to discuss the case or review media concerning it, the alternate complied with that instruction, and the jury was instructed to begin deliberations anew.

Affirmed.

1. EVIDENCE — HEARSAY — PRIOR CONSISTENT STATEMENTS — RULES OF EVI-
   DENCE.

   A prior consistent statement is admissible if (1) the declarant
   testifies at trial and is subject to cross-examination, (2) there was
   an express or implied charge of recent fabrication or improper
   influence or motive of the declarant's testimony, (3) the proponent
   offers a prior statement that is consistent with the declarant's
   challenged in-court testimony, and (4) the prior consistent state-
   ment was made before the supposed motive to falsify arose (MRE
   801[d][1][B]).

2. EVIDENCE — HEARSAY — STATEMENTS FOR MEDICAL TREATMENT — SEXUAL
   ASSAULT VICTIMS.

   Statements made for the purpose of medical treatment are admis-
   sible hearsay if they were reasonably necessary for diagnosis and
   treatment and the declarant had a self-interested motivation to be
   truthful in order to receive proper medical care, irrespective of
   whether the declarant sustained any immediately apparent physi-
   cal injury; in cases of sexual assault, the injuries might be latent,
   such as contracting a sexually transmitted disease, or psychologi-
   cal in nature and thus not necessarily physically manifested at all,
   and a sexual assault victim's complete history and a recitation of
   the totality of the circumstances of the assault are properly
   considered to be statements made for medical treatment (MRE
   803[4]).

3. CRIMINAL LAW — JURY TRIALS — SUBSTITUTION OF JURORS AFTER COMMENCE-
   MENT OF DELIBERATIONS.

   If an alternate juror replaces a juror after deliberations begin, the
   court must instruct the jury to begin its deliberations anew (MCR
   6.411).

*Bill Schuette*, Attorney General, *John J. Bursch*,
Solicitor General, *Jessica R. Cooper*, Prosecuting Attor-
ney, *Thomas R. Grden*, Appellate Division Chief, and
*Matthew A. Fillmore*, Assistant Prosecuting Attorney,
for the people.

State Appellate Defender (by *Peter Jon Van Hoek*) for
defendant.

Before: RONAYNE KRAUSE, P.J., and CAVANAGH and
JANSEN, JJ.

RONAYNE KRAUSE, P.J. Defendant was convicted by a jury, after a joint trial with his codefendant, Evan Jerome Burney,[1] of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b, and one count of unarmed robbery, MCL 750.530. Trial was, for the most part, a credibility contest between defendant and the victim. The jury apparently found the victim more credible. Defendant appeals his convictions by right, and we affirm.

The victim was working as a prostitute at the time of the offense, a fact that was fully explored before the jury by both the prosecution and the defense. The codefendants initially sought to procure her services after finding an online advertisement that had been placed by the victim's working partner. The victim testified that she refused to see two customers at once, whereupon the codefendants initially left. They then returned, tricked her into opening the door, robbed her of her cell phone and computer, and sexually assaulted her; they were interrupted by the arrival of another customer. Defendant testified that the interaction had been completely consensual until interrupted by the other customer's arrival. However, he and Burney took their money back after the acts in question and, unbeknownst to defendant until they returned to their car, Burney also took the victim's cell phone and computer. The defense theory was essentially that the victim

---

[1] This Court affirmed Burney's convictions but remanded for resentencing in his separate appeal. *People v Burney*, unpublished opinion per curiam of the Court of Appeals, issued August 25, 2011 (Docket No. 298620). *Burney* is not binding, and we have not considered it in deciding the instant appeal, but we note that the *Burney* panel resolved the alternate-juror issue, the only issue these appeals have in common, in accord with our own resolution in this case. Although we will refer to both Burney and Mahone as "codefendants," Mahone will be referred to only as defendant.

invented the claimed sexual assault as vengeance for the theft and the refusal to pay.

Defendant argues that the trial court erred by admitting several instances of inadmissible hearsay evidence, thereby requiring a new trial. We review preserved evidentiary issues for an abuse of discretion. *People v Smith*, 456 Mich 543, 549; 581 NW2d 654 (1998). An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes. *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). We agree that in a case that turns entirely on the jury's credibility determinations, it would be very difficult to deem any error harmless. However, to the minimal extent there may be any evidentiary errors in this matter, they were, or could have been, corrected by curative instructions. Accordingly, we find no basis for reversal.

Defendant first argues that inadmissible and prejudicial hearsay was admitted through the testimony of a police officer, who testified that she confirmed with unidentified inhabitants of an adjacent hotel room that they had heard a disturbance. The officer initially testified that the victim had stated that she screamed and that the neighbors had said they heard screaming, but the inadmissible statements were struck and the jury was instructed to disregard them. Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors. See *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). The prosecutor discussed the officer's confirmation of "a disturbance" during closing argument, but did not state that the officer had confirmed the screaming. This was a fair response to defendant's explicit testimony that there was no screaming and, by implication, no disturbance.

Defendant also argues that further inadmissible hearsay was admitted through the same officer's testimony that the victim said she had been threatened with a large vodka bottle. This is a closer question because the officer did, in fact, testify that the victim "said that it had been used, um, in a threatening manner." Defense counsel immediately objected, but the trial court did not rule on the objection; instead, the prosecutor immediately rephrased the question. Significantly, the officer's testimony was not responsive. She was asked only whether her attention had been directed to a bottle at the crime scene, not why. In any event, unresponsive answers may " 'work a certain amount of mischief with the jury,' " but they are generally not considered prejudicial errors unless egregious or not amenable to a curative instruction. *People v Barker*, 161 Mich App 296, 305-307; 409 NW2d 813 (1987), quoting 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 600, pp 203-204; see also *People v Waclawski*, 286 Mich App 634, 709-710; 780 NW2d 321 (2009). We do not find this testimony egregious, and although the statement could easily have been struck, defense counsel did not make a request to strike, possibly because at that point, it would simply have drawn more attention to the statement. The officer's testimony was not a prejudicial error.

However, we disagree with the prosecutor's argument that it was admissible pursuant to MRE 801(d)(1)(B) (prior consistent statement). Under that rule, a statement is admissible if four elements are satisfied:

"(1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent

with the declarant's challenged in-court testimony; and, (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose." [*People v Jones*, 240 Mich App 704, 707; 613 NW2d 411 (2000) (citations omitted).]

The fourth element is not met here, because the "supposed motive to falsify" was the codefendants' claimed refusal to pay and subsequent theft of the victim's cell phone and computer when they left the hotel room after being interrupted. Consequently, the alleged motive to falsify would have arisen before the victim talked to the officer.

In contrast, defendant's next assertion of inadmissible hearsay was properly admitted pursuant to MRE 801(d)(1)(B). The victim's coworker, who was responsible for receiving contacts from customers and directing them to the victim, testified that the victim called her shortly after the coworker had directed defendant to the victim's hotel room. The coworker testified, consistently with the victim's own testimony, that the victim told the coworker that she had not been expecting two customers to arrive and would call the coworker back. Significantly, defendant's testimony was that the victim admitted him and Burney without any complication, thereby impliedly charging that the victim had fabricated her testimony about the telephone call. And critically, this telephone call would have occurred *before* the victim would have had any motive to falsify, no matter which version of events is correct. The coworker's testimony about the victim's telephone call was properly admitted.

Defendant also argues that statements the victim made to the nurse who conducted a rape examination should not have been admitted. Statements made for the purpose of medical treatment are admissible pursu-

ant to MRE 803(4) if they were reasonably necessary for diagnosis and treatment and if the declarant had a self-interested motivation to be truthful in order to receive proper medical care. This is true irrespective of whether the declarant sustained any immediately apparent physical injury. *People v Garland*, 286 Mich App 1, 8-10; 777 NW2d 732 (2009). Particularly in cases of sexual assault, in which the injuries might be latent, such as contracting sexually transmitted diseases or psychological in nature, and thus not necessarily physically manifested at all, a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment. *Id.* at 9-10; *People v McElhaney*, 215 Mich App 269, 282-283; 545 NW2d 18 (1996). Thus, statements the victim made to the nurse were all properly admissible pursuant to MRE 803(4).

Finally, defendant argues that he was denied his right to a fair trial when the trial court removed a juror after the jury had begun deliberations and replaced that juror with the alternate juror instead of granting a mistrial. Although we would have preferred a better record, we do not conclude that the trial court abused its discretion or denied defendant a fair trial. The trial court's decision whether to remove a juror is reviewed for an abuse of discretion. *People v Tate*, 244 Mich App 553, 559; 624 NW2d 524 (2001). Constitutional issues, such as the right to a fair trial, are reviewed de novo. *People v Idziak*, 484 Mich 549, 554; 773 NW2d 616 (2009).

During voir dire, the juror explained that she had friends who were victims of sexual assault and who had been accused of sexual assault. She indicated, however, that she could be fair and impartial, although she was pregnant and would have a hard time paying her bills if

she missed many days of work. After the jury was charged, it requested that the victim's telephone call to 911 be replayed twice. The jury also requested that defendant's testimony be replayed, but changed its mind after again reviewing CJI2d 8.1 (intentional assistance) and CJI2d 18.2 (unarmed robbery). The juror then sent a note that stated in relevant part:

> I need to be dismissed/removed from the Jury at this time. Mentally I am really unable to proceed in this case. I feel myself about to have another mental breakdown and it's not good for me and my unborn child. (Stress). I cried over the break and can't really stop crying and talking to one of the other Jurors it all came out and my true feelings and personal biases is really taking an infact [sic] and I don't think its fair. I am stressing myself out + my stomach is feeling pain. So I am scared that I am going to go into early labor because the case is taking a toll on me. I am unable to put behind me my personal + past experiences in coming to a lodgical [sic] conclusion. Please can you please remove me + because of this I am putting our delibeattion [sic] at a stand by.

The juror was brought back to the courtroom by herself and explicitly told not to discuss how the voting stood but was also informed that she had to explain why she felt she could not deliberate.

Unfortunately, neither the court nor any of the attorneys asked whether she was experiencing stress because she held a minority viewpoint in the jury vote, irrespective of what that viewpoint might have been. However, contrary to defendant's pure speculation, the record that was made strongly suggests otherwise, particularly given her direct and explicit denial that she was being maltreated by the other jurors. In fact, the more rational interpretation of the juror's statements would be that she may not have held a view at all. It is abundantly clear from the record that the juror was

experiencing more than sufficient physical and emotional strain to warrant her removal from the jury, even absent her unambiguous explanation that she simply could not continue deliberating. The record shows that the juror grossly underestimated the extent to which she would become emotionally entangled when trying to reach an actual conclusion about the evidence, and she tried to do the right thing. The trial court did not abuse its discretion by removing the juror.

Defendant relies on *Tate*, 244 Mich App at 564, to support his argument that there was a danger of the alternate juror being coerced by the other jurors or that coercion actually occurred. At the time *Tate* was decided, MCR 6.411 did not permit an alternate juror, once discharged, to be recalled, although subsequent reversal of a conviction would only be required if the procedure actually prejudiced the defendant. *Id.* However, MCR 6.411 was amended a few months later and now explicitly permits the trial court to retain the alternate juror, and it merely requires that if the alternate juror replaces a juror after deliberations have begun, the trial court must instruct the jury to begin its deliberations anew. This is consistent with then recently modified FR Crim P 24(c)(3). *Id.* at 563 n 1, 565.

The portion of the transcript at which the alternate juror was selected was not transmitted to us, and it appears that the trial court's instruction to begin deliberations anew was not transcribed at all. However, it is clear from the record we do have that the alternate juror was properly instructed before his initial release from jury deliberations to not discuss the case or review any media concerning the case, the alternate juror complied with that instruction, and the jury was, in fact, properly instructed to begin deliberations anew. Defendant does not argue that the jury or the juror was

not properly instructed, and the jury is presumed to have followed its instructions. *Abraham*, 256 Mich App at 279.

We find no indication in the record that the jury could not or did not follow that instruction. Because it is again pure speculation that the alternate juror was coerced, we conclude that defendant was not prejudiced by the substitution of the alternate juror.

Affirmed.

CAVANAGH and JANSEN, JJ., concurred with RONAYNE KRAUSE, P.J.