# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOSHUA ROBERT DEMOTT,

        Defendant-Appellant.

UNPUBLISHED
October 17, 2017

No. 332826
Genesee Circuit Court
LC No. 15-037545-FC

Before: SHAPIRO, P.J., and HOEKSTRA and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Joshua DeMott, appeals by right his jury trial convictions of first-degree child abuse, MCL 750.136b(2), and first-degree child abuse in the presence of another child, MCL 750.136d(1)(a). The trial court sentenced DeMott as a third-offense habitual offender, MCL 769.11, to concurrent prison terms of 316 to 480 months for each conviction. Because there are no errors warranting relief, we affirm.

## I. BASIC FACTS

On March 19, 2015, MR, a two-year-old child living in DeMott's home, was taken to Hurley Hospital's emergency room. He had multiple injuries, including bruising on his left ear, bleeding in his right eye, bruising to the back of his head, a chemical burn on his penis, x-ray abnormalities, and fractures to his right clavicle, left radius, and his breastbone. An expert in pediatric child abuse opined that—based on the injuries to MR he observed in the pediatric intensive care unit—MR had been physically abused. At trial, MR's mother and one of his older sisters testified that DeMott had physically abused MR. MR's mother testified that when MR soiled his potty-training pants, DeMott made him cry by lifting his hand behind his back. She testified that DeMott also rubbed MR's face in the carpet because he had wet his pants, and she added that DeMott had spanked the back of MR's legs hard, making him cry on two occasions. MR's mother further reported that DeMott placed Icy Hot cream on MR's penis in retaliation for MR biting DeMott. MR's sister testified similarly, adding that she disliked living with DeMott because he was mean to MR. She stated that DeMott spanked MR's "butt" on multiple occasions and would rub MR's face into the carpet, bruising MR's face in the process. There was also testimony that DeMott referred to MR as an "Arab" and a "terrorist" and that he locked him inside a home office or bedroom on multiple occasions. DeMott denied the abuse. He

-1-

testified that MR never exhibited any behavioral problems, that he never had to discipline MR, and that he saw MR's mother spank MR daily.

## II.  PRIOR CONSISTENT STATEMENTS

### A.  STANDARD OF REVIEW

DeMott first argues that the trial court erred by admitting testimony from three witnesses regarding out-of-court statements made by MR's mother concerning how MR was injured.  We review for an abuse of discretion a "trial court's decision to admit or exclude evidence. . . ." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013).  "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010) (opinion by CAVANAGH, J) (citation and quotation marks omitted).  We generally review de novo preliminary legal questions, "including whether a rule of evidence precludes the admission of evidence." *Burns*, 494 Mich at 110.

### B.  ANALYSIS

Hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c).  As a general rule, hearsay is inadmissible.  MRE 802.  Certain statements that fit that definition of hearsay in MRE 801(c) are by definition not hearsay, see MRE 801(d), and so do not constitute inadmissible hearsay under MRE 802.  Relevant to this case, MRE 801(d)(1)(B) provides that a statement is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . . ."  In order for a statement to qualify as non-hearsay under MRE 801(d)(1)(B), the following four requirements must be satisfied:

> (1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony; and, (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose. [*People v Mahone*, 294 Mich App 208, 213-214; 816 NW2d 436 (2011) (citation and quotation marks omitted.]

On appeal, DeMott asserts that MR's mother's motivation to lie arose when she was first questioned by investigators.  As a result, he contends that the testimonies of the three witnesses that recounted her statements about how MR was injured are not admissible non-hearsay under MRE 801(d)(1)(B).  Review of the record, however, demonstrates that the challenged statements satisfy all four requirements of MRE 801(d)(1)(B) as set forth in *Mahone*.  First, MR's mother testified at trial and was subject to cross-examination.  Second, during the trial, DeMott and his lawyer implied that she was testifying falsely because she had been granted immunity from prosecution in exchange for her testimony.  Third, based on the record, it is plain that the three witnesses recounted statements from MR's mother about how MR was abused, and their

testimonies were consistent with the trial testimony from MR's mother. Finally, the grant of immunity, i.e., the alleged motivation to lie, was made after MR's mother had made the statements recounted by the challenged witnesses. Although DeMott contends on appeal that the motivation to fabricate arose when MR's mother was originally questioned, this Court has explained that "the motive in the second element must be the same motive in the fourth element of the four-pronged test to admit a prior consistent statement under MRE 801(d)(1)(B)." *People v Jones*, 240 Mich App 704, 711; 613 NW2d 411 (2000). Stated differently, because the "charge of recent fabrication or improper motive" arose based on the grant of immunity, the fourth element must be evaluated by determining if the challenged statements were made before or after the grant of immunity. The fact that MR's mother may have had a motive to lie at the time that she made the initial statements is not fatal to admitting the testimony under MRE 801(d)(1)(B). See *id*. at 711-712. In sum, all four requirements for a statement to be considered non-hearsay under MRE 801(d)(1)(B) were satisfied in this case, so the trial court did not abuse its discretion in admitting the statements.[1]

## III. IMPROPER VOUCHING

### A. STANDARD OF REVIEW

Next, DeMott argues that on two occasions a witness improperly commented on MR's mother's veracity. He complains that the trial court erred by permitting the witness to categorize MR's mother's second statement to her as the "actual story" of how MR was abused. DeMott also asserts that the prosecutor improperly elicited testimony from the witness that Child Protective Services (CPS) had substantiated that he had abused MR. Because DeMott did not object to the testimony on the grounds that it constituted improper vouching, we review this allegation of error for plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

### B. ANALYSIS

"[I]t is improper for a witness to comment or provide an opinion on the credibility of another person while testifying at trial." *People v Douglas*, 496 Mich 557, 583; 852 NW2d 587 (2014) (citation and quotation marks omitted). DeMott first asserts that the witness improperly vouched for MR's mother's credibility by testifying "that [MR's mother] admitted that her first

---

[1] In his statement of questions presented, DeMott suggests that the three witnesses' testimonies concerning MR's mother's prior consistent statements violated his constitutional right to a fair trial under the Fifth and Fourteenth Amendments to the United States Constitution. However, as he failed to present any citation to authority or analysis on that issue, we decline to consider it further on appeal. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority.").

version was not true," and that MR's mother "now told her the 'actual story of how [MR] obtained all the injuries.' " DeMott also argues, and the prosecution concedes, that the prosecutor improperly elicited testimony that CPS had substantiated that DeMott abused MR. However, even assuming that both statements were improper vouching for the credibility of MR's mother, the errors did not affect DeMott's substantial rights. *Carines*, 460 Mich at 763-764. Significant and properly admitted evidence established DeMott's identity as the MR's assailant, including the testimony of MR's mother that DeMott abused MR by hoisting his arms behind his back, rubbing his face into a carpet, and applying Icy Hot to his penis. MR's sister also testified that DeMott was physically abusing her younger brother. In addition, the record contains photographic evidence of MR's injuries, which a physician testified were consistent with MR's mother's descriptions of DeMott's abuse of MR. In light of this evidence, DeMott cannot demonstrate that the minor instances of vouching affected the outcome of the proceedings.[2]

## IV. RIGHT TO PRESENT A DEFENSE

## A. STANDARD OF REVIEW

DeMott next contends that the trial court precluded him from pursuing a full defense when it refused to allow him to question MR's mother regarding her surrender of her parental rights to MR's older siblings and what she fed MR. Because DeMott did not argue at trial that this limitation on his cross-examination of MR's mother violated his constitutional right to present a defense, this issue is unpreserved. *People v Lawhorn*, ___ Mich App ___, ___; ___ NW2d ___ (2017) (Docket No. 330878); slip op at 1 n 1. Therefore, we review it for plain error affecting his substantial rights. *Carines*, 460 Mich at 763-764.

## B. ANALYSIS

The "Fourteenth Amendment's Due Process Clause and the Sixth Amendment's Compulsory Process or Confrontation Clauses . . . guarantee[] criminal defendants a meaningful opportunity to present a complete defense." *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012) (citation and quotation marks omitted). However, "an accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id*. at 474 (citation and quotation marks omitted). "The Michigan Rules of Evidence do not infringe on a defendant's constitutional right to present a defense unless they are arbitrary or disproportionate to the purposes they are designed to serve." *Id*. (citation and quotation marks omitted omitted).

---

[2] Moreover, DeMott has not established that the alleged vouching deprived him of a fair trial. DeMott cites *People v Cowell*, 44 Mich App 623, 628; 205 NW2d 600 (1973), in support of the proposition that a "prosecutor may not attempt to place the prestige of his office, or that of the police, behind a contention that the defendant is guilty." But DeMott has not identified any instance in which the prosecutor invoked the prestige of her office or the police to establish DeMott's guilt. Therefore, we decline to address this issue further. See *Kelly*, 231 Mich App at 640-641.

DeMott argues that the actions of MR's mother and her intent in relinquishing her parental rights to MR's siblings were relevant to show that she, not DeMott, injured MR. As such, he asserts that the trial court erred by precluding him from questioning MR's mother about why she relinquished her parental rights to her daughters and by precluding him from asking her what she usually fed MR. However, both at trial and on appeal, DeMott only offers speculation that, had he been allowed to question MR's mother on those points, he would have uncovered evidence that she abused her daughters and failed to properly feed MR, which would allow an inference that she also was the person who physically abused MR. Given that this appeared to be nothing more than a fishing expedition, we conclude that the trial court did not abuse its discretion by denying DeMott's request to explore the issues.

## V. OFFENSE VARIABLES

### A. STANDARD OF REVIEW

Finally, DeMott challenges the trial court's scoring of offense variables (OVs) 7, 9, and 19 of the sentencing guidelines. We review for clear error a trial court's factual determinations with respect to the scoring of OVs in the sentencing guidelines, and the court's factual determinations "must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438-439; 835 NW2d 340 (2013).

### B. ANALYSIS

DeMott first argues that the trial court erred by assessing 50 points for OV 7. Under OV 7, the trial court must assess 50 points if a defendant treated a victim "with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). Although DeMott contends that the court scored this OV at 50 points, the record reflects that the court actually scored it at 0 points. Accordingly, we need not address this challenge further.

Next, DeMott contends that the trial court erred by assessing 10 points for OV 9. Under OV 9, a trial court must assess 10 points if two to nine victims were "placed in danger of physical injury or death." MCL 777.39(1)(c). A court should "[c]ount each person who was placed in danger of physical injury . . . as a victim." MCL 777.39(2)(a). "A person may be a victim under OV 9 even if he or she did not suffer actual harm; a close proximity to a physically threatening situation may suffice to count the person as a victim." *People v Gratsch*, 299 Mich App 604, 624; 831 NW2d 462 (2013), vac'd in part on other grounds 495 Mich 876 (2013). Here, there were two victims: MR and his mother. MR's mother was placed in danger of physical injury. She testified that she heard MR crying, approached him, and saw DeMott raising MR's arms behind his back. MR's mother stated that she told DeMott to stop because he was hurting MR, and she said that DeMott then acted like he was about to punch her, so she moved back. MR's mother recounted that she was afraid of DeMott because when she tried to help MR, he raised his fist and threatened to kill her. In addition to statements by MR's mother, the presentence investigation report (PSIR) indicates that MR's sisters both observed MR's mother tell DeMott to stop spanking MR and that DeMott responded by acting like he was going to hit MR's mother. The trial court did not err by scoring OV 9 at 10 points.

Finally, DeMott asserts that the trial court erred by assessing 15 points for OV 19. Under OV 19, a trial court must assess 15 points when "[t]he offender used force or the threat of force against another person . . . to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services." MCL 777.49(b). "The plain and ordinary meaning of 'interfere with the administration of justice' for purposes of OV 19 is to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). As this Court explained in *Hershey*:

> Opposing so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process has broad application, just as "interfered with or attempted to interfere with the administration of justice" is a broad phrase. It encompasses more than just the actual judicial process and can include conduct that occurs before criminal charges are filed, acts that constitute obstruction of justice, and acts that do not necessarily rise to the level of a chargeable offense. Decisions of both this Court and our Supreme Court have held the following conduct to constitute an interference or attempted interference with the administration of justice: . . . *threatening or intimidating a victim or witness*, telling a victim or witness not to disclose the defendant's conduct, . . . [and] attempting to deceive the police during an investigation." [*Id*. at 343-344 (emphasis added) (citations omitted).]

Here, the trial court concluded that DeMott had created an atmosphere of fear in his home and had threatened MR's mother, who testified that DeMott repeatedly made her afraid. In particular, MR's mother stated that she did not prevent DeMott from locking MR inside a room because she "was scared of [DeMott]." DeMott also raised his fist at MR's mother when she approached him after he pulled MR's arms behind his back. Again, there is testimony that DeMott threatened to kill MR's mother. The PSIR also indicates that both of MR's sisters heard their mother tell DeMott to stop spanking MR, which caused him to act like he was going to hit her. The record additionally reflects that MR's mother still felt afraid to leave DeMott after he had placed Icy Hot on the victim's penis and that she initially felt afraid to disclose his abuse of MR to a neighbor. Finally, the record reflects that because she was afraid MR's mother did not fully disclose DeMott's abuse of MR until she had taken MR to the hospital. Accordingly, on this record the trial court did not clearly err in finding by a preponderance of the evidence that DeMott employed force or threats of force against MR's mother in an attempt to oppose "so as to hamper, hinder, or obstruct the act or process of administering judgment." *Id*. at 343.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Joel P. Hoekstra
/s/ Michael J. Kelly