*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CLAUDINA YVONNE DORSETT,

Defendant-Appellant.

UNPUBLISHED
December 17, 2025
9:42 AM

No. 372141
Oakland Circuit Court
LC No. 2023-285109-FH

Before: GADOLA, C.J., and CAMERON and RICK, JJ.

PER CURIAM.

Defendant appeals as of right her jury-trial convictions of passing false title to a motor vehicle, MCL 257.254, and larceny in a building, MCL 750.360, for which she was sentenced to 30 days in jail and three years' probation for each conviction. The trial court ordered defendant to pay $55,350 in restitution. We affirm defendant's convictions but vacate the trial court's restitution order and remand for the trial court to determine the restitution amount.

## I. FACTS

This case arises out of a dispute between defendant and Tedarro Griffin. Defendant and Griffin had been dating for about a year when they started living together at Griffin's home. Griffin was trying to start a trucking business, so he purchased a semi-truck (hereinafter "the truck") from his cousin. Defendant accompanied Griffin to buy the truck. Griffin brought home the title to the truck but he did not sign it. Shortly after, defendant and Griffin's relationship began to break down. Griffin asked defendant to move out and began the process of evicting her. Defendant went to Griffin's house and took several possessions from him including the title and keys to the truck. Defendant then titled the truck in her own name.

Defendant testified at trial that Griffin asked her to get the truck titled in her name because Griffin's license was suspended. Kyle Mountz, a detective at the Oakland County Sheriff's Office, testified at trial that defendant told him that she kept the truck's title because Griffin wanted to have the title in defendant's name because Griffin's driver's license was suspended. Detective Mountz testified that he determined that Griffin's driver's license was not suspended at the time. Griffin likewise testified that his license was not suspended.

-1-

The jury found defendant guilty of passing false title to a motor vehicle and larceny in a building. The trial court held a restitution hearing. At the restitution hearing, John Lup, a mechanic for heavy-duty trucks, discussed the damage to the truck after it sat unused for over two years. Lup estimated the cost to make the truck road ready, including labor and parts, would be about $35,000. At the restitution hearing, Anthony Merriman testified that he sold the truck to Griffin for $16,000. Griffin testified that he paid Merriman a total of $4,350 to store the truck. The truck was never moved from Merriman's lot because Griffin did not have the key or registered plates.

In the restitution order, the trial court ordered the truck to be titled in Griffin's name and ordered defendant to pay $55,350. The trial court found the total restitution award "comprised of the $16,000.00 cost of the vehicle, the $4,350.00 storage fees, and $35,000.00 to make the truck road ready." Defendant now appeals.

## II. RESTITUTION

Defendant argues that the trial court abused its discretion when it failed to calculate restitution for the fair market value of the truck according to MCL 780.766(3)(b) and MCL 769.1a(3)(b). We agree.

### A. STANDARD OF REVIEW

A court's calculation of a restitution amount is reviewed for an abuse of discretion, and its factual findings are reviewed for clear error. *People v Corbin*, 312 Mich App 352, 361; 880 NW2d 2 (2015). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). "A trial court also necessarily abuses its discretion when it makes an error of law." *People v Al-Shara*, 311 Mich App 560, 566; 876 NW2d 826 (2015). "The proper application of MCL 780.766(2) and MCL 769.1a, which authorize the trial court to award restitution, is a matter of statutory interpretation which we review de novo." *People v Bentley*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364303); slip op at 3.

### B. ANALYSIS

"Crime victims have a constitutional and a statutory right to restitution." *Id*. at ___; slip op at 4, citing Const 1963, art 1, § 24, and MCL 780.766. "Two primary statutes authorize and require the court to order restitution." *Id*. at ___; slip op at 4. The general restitution statute, MCL 769.1a, provides that restitution for any victim shall be ordered in addition to the defendant's sentence for a felony, misdemeanor, or ordinance violation conviction. MCL 769.1a(2). The Crime Victim's Rights Act (CVRA), MCL 780.751 *et seq*., provides for restitution as follows:

> (2) Except as provided in subsection (8), when sentencing a defendant convicted of a crime, the court shall order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate. [MCL 780.766(2).]

In calculating the restitution required under MCL 780.766, the court must consider the "amount of the loss sustained by any victim as a result of the offense." MCL 780.767(1). "[N]either the CVRA nor the general restitution statute define 'full restitution,' but under the plain meaning of the word full, both statutes impose a duty on sentencing courts to order defendants to pay restitution that is maximal and complete." *Bentley*, ___ Mich App at ___; slip op at 5 (quotation marks and citation omitted). "[R]estitution may encompass only those losses that are easily ascertained and are a direct result of a defendant's criminal conduct." *Corbin*, 312 Mich App at 362 (quotation marks and citations omitted). "Where the evidence provides a reasonably certain factual foundation for a restitution amount, the statutory standard is met." *Id*. at 365.

Where there is a "dispute regarding the proper amount of restitution to be ordered, the prosecuting attorney must prove by a preponderance of the evidence the amount required to make the victim whole." *People v Bryant*, 319 Mich App 207, 212; 900 NW2d 360 (2017). "When determining the amount of restitution to award a victim, the focus is consistently not on what a defendant took, but what a victim lost because of the defendant's criminal activity." *In re White*, 330 Mich App 476, 483; 948 NW2d 643 (2019) (quotation marks and citation omitted). "Restitution is not designed to provide a windfall for crime victims, but was created to ensure that victims are made whole for their losses to the extent possible." *Id*. at 480.

MCL 780.766(3) requires a trial court to order restitution for losses that a victim sustains to his or her property. If the "crime results in damage to or loss or destruction of property of a victim of the crime," the court must order the "return of the property." MCL 780.766(3)(a). See also MCL 769.1a(3).[1] "If return of the property . . . is impossible, impractical, or inadequate," the court shall order the defendant to pay the "fair market value of the property" on either the date of the damage, loss, or destruction or on the date of sentencing, whichever is greater, less the value of the property that is returned. MCL 780.766(3)(b). See also MCL 769.1a(3)(b). The statutes provide, "if the fair market value of the property cannot be determined or is impractical to ascertain, then the replacement value of the property shall be utilized in lieu of the fair market value." MCL 780.766(3)(b)(*i*) and (*ii*); MCL 769.1a(3)(b)(*i*) and (*ii*). Fair market value, under MCL 780.766(3)(b), is the "the amount of money that a ready, willing, and able buyer would pay for the asset on the open market." *White*, 330 Mich App at 483 (citation omitted).

In this case, the trial court held a hearing to determine the appropriate amount of restitution. Griffin sought restitution for his losses that resulted from defendant's crime. Under MCL 780.766(2), the trial court must order full restitution for all losses that Griffin sustained. Griffin is entitled to restitution for amounts that are "a direct result of a defendant's criminal conduct[,]" *Corbin*, 312 Mich App at 362, as governed by governed by MCL 780.766(3) and MCL 769.1a(3).

The trial court ordered defendant to pay $55,350 in restitution related to the truck, in addition to ordering defendant to return the title and keys to the truck. However, to order monetary

---

[1] MCL 769.1a(3) provides that the order of restitution "may require" defendant do the actions outlined in subsections (a) and (b), while MCL 780.766(3) provides that the order of restitution "shall require" that the defendant return the property and pay restitution if returning the property is impossible, impractical, or inadequate.

restitution under the relevant statutes, the trial court was required to first determine that the return of the property is "impossible, impractical, or inadequate." MCL 780.766(3)(b); MCL 769.1a(3)(b). The trial court made no finding as to whether the return of property is "impossible, impractical, or inadequate," but in ordering defendant to return the title, the trial court impliedly found the return of property neither impossible nor impractical. Because it ordered additional restitution, the trial court impliedly found the return of property inadequate.

Having concluded that the trial court's restitution order included an implied finding of the inadequacy of returning the property, the trial court was next required to consider whether the "fair market value of the property on the date of the damage, loss, or destruction" or "on the date of sentencing" was greater. MCL 780.766(3)(b); MCL 769.1a(3)(b). In the present matter, the trial court made no determination as to the fair market value of the truck on either date, and the prosecution did not present any evidence concerning the fair market value of the truck. Instead, the trial court determined that Griffin purchased the vehicle for $16,000 and the cost to make the vehicle road-ready was $35,000. Neither of these amounts is the "amount of money that a ready, willing, and able buyer would pay for the asset on the open market" either on the date of damage or on the date of sentencing. *White*, 330 Mich App at 483 (citation omitted). The cost of repair often does not bear a relationship to a vehicle's market value because, as Lup testified in the restitution hearing, a vehicle owner may pay to repair a vehicle even though the repair costs exceed the market value of the vehicle.

The statutes provide an alternative calculation "if the fair market value of the property cannot be determined or is impractical to ascertain . . . ." MCL 780.766(3)(b)(*i*) and (*ii*); MCL 769.1a(3)(b)(*i*) and (*ii*). In lieu of the fair market value, the court can use the replacement value of the property. *Id*. On this issue as well, the trial court did not make any finding regarding whether the fair market value of the truck could not be determined or was "impractical to ascertain," nor as to the replacement value of the vehicle either on the date of the damage or on the date of sentencing. For these reasons, there was insufficient evidence to support the trial court's order of restitution.

Once the trial court determines whether the fair market value on the date of the damage or on the date of sentencing is greater, then the greater amount is reduced by "the value, determined as of the date the property is returned, of that property or any part of the property that is returned[.]" MCL 780.766(3)(b); MCL 769.1a(3)(b). The trial court likewise has made no finding as to the value of the property as of the date the property was returned.[2]

The trial court's restitution order for the value of the truck, based on the $16,000 purchase price and $35,000 repair estimate, without an actual estimation of the vehicle's fair market value, was an error of law and an abuse of discretion. See *Al-Shara*, 311 Mich App at 566. "It is not the function of an appellate court to decide disputed questions of fact in the first instance…." *In re Martin*, 200 Mich App 703, 717; 504 NW2d 917 (1993). The trial court's failure to make factual

---

[2] As of the restitution hearing, on August 7, 2024, the truck's title still had not been returned to Griffin. Accordingly, the amount may not need to be reduced, but must be considered on remand, if the property has been returned.

-4-

findings regarding the adequacy of the return of the property and the fair market value of the truck inhibits appellate review of this issue and requires a remand for the trial court to make such findings in the first instance. For this reason, we vacate the trial court's order of restitution and remand this matter for the trial court to follow the statutory requirements for determining restitution in a manner consistent with this Court's opinion.

## III. PROSECUTORIAL MISCONDUCT[3]

Defendant also argues that she is entitled to a new trial because the prosecution presented false testimony on a material issue at trial. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

"To preserve a claim of prosecutorial error, a defendant must timely and specifically challenge the prosecutor's statements or conduct." *People v Thurmond*, 348 Mich App 715, 735; 20 NW3d 311 (2023). Defendant did not object at trial to the prosecution's purported use of false testimony regarding Griffin's driver's license status. Thus, this issue is unpreserved.

This Court reviews unpreserved claims of prosecutorial misconduct "for plain error affecting defendant's substantial rights." *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). Under the plain error rule, defendants must show the following four elements: (1) error must have occurred, (2) the error was plain, i.e., clear or obvious, (3) the plain error affected substantial rights, and (4) once a defendant satisfies these three requirements, this Court must exercise its discretion in deciding whether to reverse. *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018). "A defendant's substantial rights are affected if the plain error affected the outcome of the lower court proceedings." *People v Abcumby-Blair*, 335 Mich App 210, 217; 966 NW2d 437 (2020). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Randolph*, 502 Mich at 10.

### B. ANALYSIS

"A defendant's right to due process is violated when a prosecutor knowingly allows false testimony from a witness to go uncorrected." *Thurmond*, 348 Mich App at 736. "A new trial is required if the uncorrected false testimony could in any reasonable likelihood have affected the judgment of the jury." *People v Smith*, 498 Mich 466, 476; 870 NW2d 299 (2015) (quotation marks and citation omitted). "The defendant has the burden of demonstrating that a witness's testimony was, in fact, false." *Thurmond*, 348 Mich App at 736.

---

[3] "This Court explained in *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015), that a more accurate label for most claims of prosecutorial misconduct is 'prosecutorial error,' while only the most extreme cases rise to the level of 'prosecutorial misconduct.'" *People v Caddell*, 332 Mich App 27, 71 n 10; 955 NW2d 488 (2020).

Defendant argues that Griffin's and Detective Mountz's testimony that Griffin's driver's license was not suspended on May 1, 2022, was false testimony on a material issue at trial. We disagree. Defendant argues that her exhibit to her motion for a new trial demonstrates that Griffin's driver's license was suspended on May 1, 2022. The document that defendant attached is a Secretary of State license status report for May 1, 2022, for Griffin. In the non-commercial license row, the status is listed as "restricted." The certification document states that Griffin "was eligible to be driving in compliance with these restrictions on the date of 01-May-2022." Under MCL 257.66, suspension "means that the driver's license and privilege to drive a motor vehicle on the public highways are temporarily withdrawn but only during the period of the suspension." Meanwhile, a restricted license "permits the individual to whom it is issued to operate only the vehicle equipped with an ignition interlock device . . . to take any driving skills test required by the secretary of state, and to drive to and from" various places such as home, work, and court ordered treatment. MCL 257.304(4).

Defendant has not met her burden of demonstrating that Griffin's "restricted" status means that the prosecution used false testimony at trial. See *Thurmond*, 348 Mich App at 736. Detective Mountz testified that he determined that Griffin's driver's license was not suspended. Griffin testified that he had a valid driver's license when he received the title on May 1, 2022. Griffin's license, according to defendant's exhibit, was restricted, meaning that Griffin had a valid and not suspended license that permitted him to drive in compliance with the restrictions. Defendant has not demonstrated that the prosecution allowed any false testimony or that an error occurred. *Randolph*, 502 Mich at 10. Therefore, defendant is not entitled to a new trial.

Affirmed in part, vacated in part, and remanded for further restitution proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Thomas C. Cameron
/s/ Michelle M. Rick