# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BILLY JOE BENNETT,

Defendant-Appellant.

UNPUBLISHED
March 22, 2018

No. 333080
Oakland Circuit Court
LC No. 2015-255656-FC

Before: M. J. KELLY, P.J., and JANSEN and METER, JJ.

PER CURIAM.

Defendant, Billy Bennett, appeals as of right his jury trial conviction of first-degree felony murder, MCL 750.316(1)(b). He was sentenced to life in prison without parole. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

In 1988, Elnora Barrager was murdered inside her home in Pontiac, Michigan. She was 88 years old at the time. Before her death, she was subjected to physical trauma. There were multiple bruises, scrapes, and abrasions on her face, which suggested application of force or a blunt impact. The medical examiner opined that some of the injuries to Barrager's head were consistent with an impact of her head against a wall. Barrager also had abrasions on her right shoulder, scraped skin on top of her humerus, bruises to her clavicle, a broken rib, and injuries to her hip bone, knees, and ankles. There was also evidence that she was sexually assaulted. At the scene, the police located suspected blood stains on Barrager's bedsheets and her nightgown. Although the crime was initially investigated, the police were unable to determine who had killed Barrager.

In 2005, a police detective was assigned the murder investigation. The record reflects that he requested a review of the physical evidence in 2006, which resulted in a partial DNA profile from the blood evidence on Barrager's nightgown. However, no identifications were obtained. Subsequently, in 2015, the police detective asked the Michigan State Police crime laboratory if a more detailed profile of the previously submitted samples could be obtained due to the development of technology in the interim years. This time, the partial DNA profile previously obtained was determined to be associated with Bennett. The police detective obtained a search warrant for a buccal swab from Bennett, and further forensic testing matched Bennett's DNA to the DNA located at the scene.

-1-

After Bennett was arrested he acknowledged knowing Barrager, asserting he had assisted her with fixing her lawnmower in 1985. He did not recall any further contacts or rendering assistance to Barrager after that time and was unsure whether he had entered her home any time after 1985. The police detective also questioned Constance Resendez, who had been in a romantic relationship with Bennett from 1987 to 1988. According to Resendez, she was not initially honest with the police when questioned in 1990; however, when she was questioned in 2015, she implicated Bennett.

At trial, Resendez testified that in March 1988, Bennett was driving, with Resendez in the front passenger seat and James Ruperd[1] in the backseat of the vehicle, when it stopped running and Bennett pulled over to the curb in an area near the trailer park where they lived. The vehicle would not restart. Initially, Bennett and Ruperd indicated they would go to one of the nearby houses to use the telephone, but then stated they would break into one of the homes. Resendez testified that she wanted no part in their activities, so she exited the vehicle and began walking in the direction of the trailer park. She saw Bennett and Ruperd walk up to a house, heard a "big bang," and heard Bennett loudly yelling "Hey, hey" at the door of the house. Resendez opined that it took her approximately 15 minutes from the time she left the vehicle to arrive home. Approximately 15 minutes after arriving home, Resendez asserted that Bennett entered the mobile home with his right hand bleeding and wrapped in a cloth. Resendez claimed that she did not question him regarding his hand injury because their relationship was abusive. She testified that Bennett told her that he stole a purse. Resendez testified that sometime later, while visiting Bennett's family in Newberry, Michigan, Bennett verbally told her he was "lying low" because Ruperd had killed an old woman at the house he and Ruperd broke into.

At trial, Bennett testified that he did not kill Barrager, that his blood was in her home because he had cut his hand while repairing a light fixture for her, and that he had no financial motive to burglarize Barrager's home because he was gainfully employed. The jury, however, convicted him of first-degree murder.

## II. INEFFECTIVE ASSISTANCE

### A. PRESERVATION AND STANDARD OF REVIEW

Bennett argues that his defense lawyer provided constitutionally deficient assistance at trial for a number of reasons. "In order to preserve the issue of effective assistance of counsel for appellate review, the defendant should make a motion in the trial court for a new trial or for an evidentiary hearing. Failure to move for a new trial or for a *Ginther*[2] hearing ordinarily precludes review of the issue unless the appellate record contains sufficient detail to support the defendant's claim." *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000) (citation omitted). Here, Bennett did not file the requisite motion for an

---

[1] Ruperd was Bennett's ex-brother-in-law from a marriage that ended in divorce. According to Resendez, Ruperd would sporadically reside with her and Bennett.

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

evidentiary hearing or new trial before sentencing regarding the ineffective assistance claim he now raises on appeal. The issue, therefore, is not preserved for appeal. "Where claims of ineffective assistance of counsel have not been preserved, our review is limited to errors apparent on the record." *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014) (citation omitted).[3]

## B. ANALYSIS

In order to establish error warranting relief, a defendant must show that his defense lawyer's decision fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for the unprofessional error, the outcome of his trial would have been different. *People v Gioglio (On Remand)*, 296 Mich App 12, 22; 815 NW2d 589 (2012), remanded for resentencing 493 Mich 864 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (citation and quotation marks omitted). A defendant's lawyer is presumed to be effective, and the defendant bears a heavy burden to demonstrate otherwise. *People v Dixon*, 263 Mich App 393, 396; 688 NW2d 308 (2004). Further, a defendant is required to "overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012).

Bennett first contends his lawyer was ineffective for failing to secure an expert to perform an independent evaluation of the DNA evidence and to refute the testimony of Heather Vitta, the prosecution's forensic expert. "Decisions regarding . . . whether to call or question witnesses are presumed to be matters of trial strategy," and "the failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Solloway*, 316 Mich App 174, 189; 891 NW2d 255 (2016) (citations, quotation marks, and alterations omitted). Bennett's theory was that there was an innocent explanation for the presence of his blood at the scene. Vitta's testimony that the DNA testing could only identify the source of the blood, not the length of time it had been present was, therefore, consistent with Bennett's theory. Further, Bennett provides no offer of proof that an independent expert would have provided any alternative or additional information to support Bennett's theory of the case or

---

[3] Bennett moved in this Court for a remand for a *Ginther* hearing. We denied that motion without prejudice to our review of the case. *People v Bennett*, unpublished order of the Court of Appeals, entered July 18, 2017 (Docket No. 333080). Upon further review, we are unpersuaded that a *Ginther* hearing is required prior to review of the issue on appeal because Bennett has not demonstrated any issue for which further factual development would advance his claim. See MCR 7.211(C)(1)(a) (requiring that a motion for remand on the basis "that development of a factual record is required for appellate consideration of the issue" must be supported "by affidavit or offer of proof regarding the facts to be established at a hearing"); see also *People v. Hernandez*, 443 Mich 1, 15; 503 NW2d 629 (1993), abrogated in part on other grounds *People v Mitchell*, 454 Mich 145 (1997) (stating that the decision whether to grant a remand is discretionary).

-3-

to exonerate him of the charges. Thus, regardless of whether it was proper trial strategy for Bennett's lawyer to not retain an independent expert, Bennett has failed to show that he was deprived a substantial defense by the absence of an independent DNA expert.

Similarly, Bennett's assertion that the failure to match his blood type to the samples, rather than his DNA, comprised error or an avenue to be pursued by his lawyer is without merit. Vitta testified the blood, not skin cells or other bodily fluid, yielded the DNA profile. Again, however, Bennett has not presented an offer of proof that such evidence would have been favorable to him should it have been presented.

Bennett also contends that his lawyer was ineffective for failing to present testimony from his former employers. The record reflects that Barrager was murdered 27 years before trial. There is no evidence that any of the witnesses could be located, were willing to testify, would substantiate Bennett's claims or were even alive at the time of trial. With reference to Bennett's former employers, there was no substantial contention at trial that Bennett was not employed. Bennett testified to holding several jobs simultaneously. While Resendez opined that Bennett engaged in odd jobs and not steady work, this did not comprise a complete contradiction of Bennett's assertions regarding his employment. Further, Bennett asserts that his employers would have verified a reason for him to be in the vicinity of Barrager's home premised on his work. Yet, according to Bennett, his contacts with Barrager arose primarily when he was visiting his sister who lived next door to Barrager. At most, the anticipated testimony of his former employers, if consistent with Bennett's unsupported assertions, would have been cumulative and of no particular relevance to the purpose he suggested it was necessary to obtain.

Bennett also argues that his lawyer was ineffective for failing to secure or present a coworker to corroborate his version of the last contact he had with Barrager and how his blood came to be in her home. Again, he provides no offer of proof that his coworker could be located, was willing to testify, or could recall the specific events Bennett alleged.

Further, although a defense lawyer "always retains the 'duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary,' " *Trakhtenberg*, 493 Mich at 52 (citation omitted), there is no evidence on this record that a reasonable investigation was not conducted. Instead, in connection with his motion for remand to the trial court, Bennett submitted an affidavit from his appellate defense lawyer indicating that his trial defense lawyer was not forthcoming with information about the extent of his investigation. Nevertheless, based on the record before this Court, it appears that Bennett's trial lawyer sought to contact or procure Bennett's co-worker and other witnesses to testify at trial to corroborate Bennett's version of events. While there is no copy of Bennett's witness list in the trial court file, at the pretrial hearing his lawyer denied any response or contact from Bennett's family since the preliminary examination. Bennett's lawyer further acknowledged that Bennett had provided him with a list of names of possible witnesses, whom he had attempted to locate. He indicated, however, that he had so far been unsuccessful given the amount of time that had elapsed since the crime. Bennett's lawyer noted that the trial court had the authority to direct the prosecutor to assist in tracking down possible witnesses and that the matter had been discussed "in chambers." The trial court responded by directing Bennett's lawyer to provide the prosecutor with the names and possible addresses for the identified individuals to procure the prosecutor's assistance "in locating any potential witnesses that you're not able to locate."

While the available record does not indicate what, if any, actions were taken following this directive, the record does sufficiently indicate efforts undertaken by Bennett's lawyer to locate potential witnesses, which were ultimately either unsuccessful or deemed to be not helpful to Bennett. Finally, Bennett provides no offer of proof and the lower court record fails to support the contention of a lack of effort to secure witnesses for Bennett or that the purported testimony of the witnesses now identified on appeal would have exonerated Bennett, corroborated Bennett's version of events, or resulted in a different outcome.

Bennett further contends his lawyer was ineffective for stipulating to the admission of certain evidence at trial, suggesting it improperly bolstered the prosecution's case. At trial, the prosecutor and Bennett's lawyer stipulated that the DNA evidence was properly processed and maintained. Bennett contends that stipulation demonstrates that his lawyer was ineffective because attacking these aspects of the evidence could have called into question the validity of the results obtained. Bennett, however, has made no allegations or presented an offer of proof to suggest any anomaly or impropriety in the maintenance of the records or evidence to contradict the stipulation. As such, he has failed to establish the factual predicate for this claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Next, Bennett argues his lawyer was ineffective in establishing the discrepancies in testimony between Resendez and Dorothy Valley, Barrager's neighbor, and by failing to file motions seeking to suppress their testimonies. Valley testified that on the night of the murder she heard breaking glass and a scream. Valley's testimony did not implicate Bennett and was corroborated by police testimony of finding broken glass at the crime scene. Resendez testified that she observed Bennett and Ruperd approach Barrager's house, but she did not see them enter the home. The testimony of both individuals was presented at trial for the jury. Differences in the testimony went to the weight and credibility to be afforded the testimony, which was solely within the purview of the jury. See *People v McGhee*, 268 Mich App 600, 624; 709 NW2d 595 (2005). It would be reasonable trial strategy for Bennett's lawyer not to be perceived as brow beating an elderly woman such as Valley, particularly when her testimony did not identify or implicate Bennett. Further, Bennett's lawyer did, on multiple occasions, call into question the veracity of Resendez and the credibility of her recollection of various relevant events. Thus, we see no error on this point.

Bennett further claims that his lawyer was ineffective for failing to share information obtained through discovery with him. At the pretrial, Bennett raised this issue, and his lawyer responded:

> [T]he discovery in this matter is quite voluminous. There are over a thousand pages of actual documents and paper. There are several discs and CDs that are involved in this matter. All the pertinent information that is part of that discovery, I've shared with Mr. Bennett. I have provided him with a copy of the preliminary exam transcript. I've provided him a copy of all of the DNA evidence and things of that nature. I've actually taken the discovery with me to the Oakland County Jail and sat down with Mr. Bennett for over several hours going through that discovery with him and still, again, providing him with copies of those documents which I thought was pertinent.

Bennett's lawyer also secured an order from the trial court to permit his use of a laptop computer at the jail when meeting with Bennett. Bennett has provided nothing other than speculation with regard to whether information continued to be shared after this point, and as such, he has failed to establish the factual predicate for this claim. *Hoag*, 460 Mich at 6.

Next, Bennett claims that his lawyer was ineffective for revealing Bennett's convictions for a 1989 breaking and entering and his drunk driving and malicious destruction of property convictions. It is recognized:

> Every criminal defense attorney must make strategic and tactical decisions that affect the defense undertaken at trial. Most criminal defense attorneys have a variety of options from which to choose that affect, if not determine, how the jury understands and comprehends the case. Many of these options in a particular case may be contradictory, confusing, incredible, or simply poor. The role of defense counsel is to choose the best defense for the defendant under the circumstances. [*People v Pickens*, 446 Mich 298, 324-325; 521 NW2d 797 (1994).]

Resendez was the prosecution's primary witness. Her testimony placed Bennett at the scene of the crime and established that his hand was bleeding. As such, it was incumbent on Bennett's lawyer to challenge her credibility. In undertaking this task, Bennett's lawyer elected to reveal Resendez's involvement with Bennett in a breaking and entering that resulted in both of them being convicted in 1989. Although prejudicial to Bennett, the testimony also called into question Resendez's credibility because it involved a crime of theft and served to help postulate that Resendez's testimony against Bennett was motivated by revenge or retribution.

Similarly, by raising questions regarding Bennett's 1988 motor vehicle accident, his lawyer challenged Resendez's credibility by contradicting the timeline and factual assertions made by Resendez regarding her time spent with Bennett in Newberry, Michigan following the accident. Questioning the accuracy of Resendez's recollection of these events served to attack her contention regarding verbal statements made by Bennett to her regarding Barrager's murder. Thus, it is likely that the decision was based on trial strategy. See *People v Armstrong*, 100 Mich App 423, 426; 298 NW2d 752 (1980) ("Even the intentional introduction by defense counsel of a prior criminal record does not constitute a serious mistake of counsel depriving defendant of a fair trial or of effective assistance of counsel where the record was introduced as a trial tactic."). Moreover, Bennett cannot attribute the difficulties he encountered regarding any incriminatory statements when testifying regarding these events, given his decision to testify was contrary to the advice of his lawyer. Premised on the fact that revelation of this information was a matter of trial strategy and the existence of DNA evidence linking Bennett to the crime scene established Bennett's guilt, we cannot concluded that Bennett was unduly prejudiced or that the jury was unduly influenced with regard to the disclosure of information regarding Bennett's prior convictions. Furthermore, during its final instructions to the jury, the trial court indicated that evidence or testimony pertaining to other crimes involving Bennett had limited use and could not be used to suggest his bad character or predisposition to engage in criminal behavior. See *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011) ("Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors.").

Finally, Bennett implies that the prosecution purposefully used all of the evidence to conduct the DNA analyses in order to preclude his ability to obtain an independent assessment. There is no record evidence to support such a contention. Vitta explained that the initial procedures to test such evidence required larger samples. This left less material for retesting as new methods were developed over the pending 27 year period between when the murder occurred and the most recent results obtained linking Bennett to the blood samples. There is nothing within the trial court record to suggest that the evidence was used or reduced through bad faith. Thus, Bennett's lawyer was not ineffective for failing to raise this issue below.

## III. PROSECUTORIAL MISCONDUCT

### A. STANDARD OF REVIEW

Bennett also asserts the prosecutor engaged in misconduct by querying Bennett's employment history as a means to suggest he had a motive to commit a breaking and entering of Barrager's home. In addition, the prosecutor implied that Bennett's need for additional money was to support his illegal drug habit. Bennet additionally argues that his trial lawyer was ineffective for failing to object to this testimony and evidence. "In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Because he did not object to the prosecutor's questioning or comments during closing argument, this issue is unpreserved. Unpreserved prosecutorial misconduct claims are reviewed for plain error affecting the defendant's substantial rights. *People v Thomas*, 260 Mich App 450, 453-454; 678 NW2d 631 (2004). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Bennett*, 290 Mich App at 475-476 (citation and quotation marks omitted). Moreover, this Court "cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Id*. at 476.

### B. ANALYSIS

In general, "[p]rosecutors are accorded great latitude regarding their arguments and conduct." *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (citation and quotation marks omitted). "Prosecutors are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *People v Bailey*, 310 Mich App 703, 722; 873 NW2d 855 (2015) (citation and quotation marks omitted).

Bennett's lawyer raised the issue of Bennett's employment on cross-examination of Resendez. Bennett continued to focus on his employment by offering the testimony of Shirley Byars and detailing his employment history while on the witness stand. Part of Bennett's theory at trial pertained to his assertion that because he was gainfully employed and earning wages he had no financial need to engage in a breaking and entering or larceny. Thus, the prosecutor's further questioning of Bennett regarding his employment did not constitute misconduct, as "[a] prosecutor may fairly respond to an issue raised by the defendant." *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008).

Bennett also asserts misconduct by the prosecutor in questioning Bennett regarding specific time periods pertaining to his employment, during which Bennett revealed that he was in jail. Bennett took the witness stand against the advice of his lawyer. He testified regarding his work history, implying he had financial means available to him, obviating any need to engage in a larceny. Once an issue is raised, the door is open "to a full, not just a selective, development." *People v Allen*, 201 Mich App 98, 103; 505 NW2d 869 (1993). Bennett's lawyer may have elected not to object to this testimony in order not to draw unwanted or prolonged attention to the brief reference rather than highlight this part of Bennett's testimony. *Bahoda*, 448 Mich at 287 n 54. This Court "will not substitute our judgment for that of counsel on matters of trial strategy, nor will we use the benefit of hindsight when assessing counsel's competence." *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). Further, this revelation by Bennett was merely cumulative information already elicited. Thus, Bennett is unable to demonstrate that elicitation of the testimony comprised prosecutorial misconduct, that his lawyer was ineffective for failing to object to the query, or that he was prejudiced by the comment, particularly in light of the trial court's instructions to the jury regarding references to Bennett's prior criminal history and its limited usage.

Bennett also challenges the prosecutor's solicitation of testimony from Bennett's brother that Bennett had a "crack habit." Bennett argues that the testimony was hearsay. He also contends that it was improper for the prosecutor to reference it during closing argument. Bennett's use of cocaine was initially asserted by Resendez. Thereafter, the following exchange occurred between the prosecutor and Bennett's brother during trial:

> *Q.* Did your brother have a drug problem [at the time of the murder]?
>
> *A.* Yes.
>
> *Q.* Crack?
>
> *A.* Yes.
>
> *Q.* He did a lot of it, right?
>
> *A.* I wasn't there, but – I don't know how much his habit was.
>
> *Q.* It was a habit?
>
> *A.* That's what I've heard from other family.
>
> *Q.* And do you know if that was costing him a lot of money to maintain that habit?
>
> *A.* I'm sure it would.
>
> *Q.* Do you know if he did any drugs when he was up there with you guys, up in Newberry?
>
> *A.* No, he did not.

-8-

Thus, Bennett's brother affirmatively testified that Bennett used cocaine, but could not definitively assert personal knowledge of the extent of his drug use. As such, hearsay was not elicited. Bennett's brother's assertion was also cumulative to testimony elicited from Resendez. Bennett's drug use was a peripheral issue at trial to suggest a motive in response to Bennett's contention that his employment precluded his need to obtain money from the victim through a larceny. In addition, MRE 404(b) precludes the use of "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith," but such evidence can still be used for other purposes, such as proof of a motive to commit the crime. *People v Knox*, 469 Mich 502, 508-509; 674 NW2d 366 (2004), quoting MRE 404(b). Therefore, because the above testimony did not comprise prosecutorial misconduct, Bennett's lawyer was not ineffective for failing to object. See *People v Hardy*, 494 Mich 430, 445; 835 NW2d 340 (2013).

Bennett next takes issue with comments by the prosecutor in closing arguments. The prosecutor stated:

> Everything you hear from Billy Bennett is based on what Billy Bennett is telling you. He's telling you. He said, you know, he's a family man, he was, you know, helping [Resendez], he was, you know, he was working two jobs, you know, and – and then Mr. Taylor sells, "Well [Resendez] was kind of slurring him, she said he had a, you know, crack habit." But that's not the only place you got that little bit of information. You got that from Billy's own brother, Bob. Bob's the one that said, "Yeah, he had a crack habit." And I asked him, "Was that expensive?" And he said, "You know, I imagine it was." We don't have to show a motive, but ladies and gentlemen, I mean, he's a drug addict, he's a crack addict. And maybe it's – it costs him more than what he makes to keep his habit going. The intent was to commit a larceny. He didn't pick up that wallet, because he'd ripped out that light. . . .

Bennett's theory of the case was that he lacked a motive to commit the breaking and entering and larceny because he was gainfully employed and did not require the money. The prosecutor's comments, particularly when viewed in context, served to dispute Bennett's theory of defense and suggested weaknesses in Bennett's case. Thus, they were a fair response to an issue raised by Bennett. See *Brown*, 279 Mich App at 135. Consequently, the comments did not constitute prosecutorial misconduct. Further, the trial court specifically instructed the jury that comments or statements by the trial lawyers did not comprise evidence, which the jury presumptively followed. See *Mahone*, 294 Mich App at 212.

For the foregoing reasons, Bennett has failed to establish that his lawyer provided ineffective assistance or that the prosecutor committed prosecutorial misconduct.

Affirmed.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Patrick M. Meter