# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ERNESTO EVARISTO URIBE,

        Defendant-Appellant.

UNPUBLISHED
January 3, 2019

No. 338586
Eaton Circuit Court
LC No. 13-020404-FC

Before: BOONSTRA, P.J., and JANSEN and GADOLA, JJ.

GADOLA, J. (*dissenting*).

Defendant appeals his convictions and sentences on the ground that the trial court erred in admitting hearsay testimony from Dr. Stephen Guertin concerning statements made to him by the victim describing the alleged sexual abuse. The majority affirms, concluding that the hearsay testimony was admissible under the hearsay exception set forth under MRE 803(4) for statements made for the purpose of obtaining medical treatment. I respectfully dissent from the majority opinion and would reverse and remand for a new trial.

This Court reviews a trial court's decision regarding the admission of evidence for an abuse of discretion. *People v Katt*, 248 Mich App 282, 288; 639 NW2d 815 (2001). An abuse of discretion exists "only when an unprejudiced person, considering the facts on which the trial court acted, would say there was no justification or excuse for the ruling made." *People v Rice (On Remand)*, 235 Mich App 429, 439; 597 NW2d 843 (1999).

Hearsay statements are generally inadmissible as evidence unless authorized under a hearsay exception. MRE 802. The hearsay exception set forth under MRE 803(4) permits the admission of the following statements:

> Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment.

Under this exception, out-of-court statements made for the purpose of obtaining medical treatment are admissible if those statements "were reasonably necessary for diagnosis and treatment" and "if the declarant had a self-interested motivation to be truthful in order to receive

-1-

proper medical care." *People v Mahone*, 294 Mich App 208, 214-215; 816 NW2d 436 (2011). In cases of sexual assault, because injuries such as sexually transmitted disease and psychological trauma may be latent, a victim's statements regarding her complete history and the circumstances of the assault are to be considered statements made for the purpose of medical treatment. *Id*. at 215.

Under Michigan caselaw, however, MRE 803(4) does not apply to statements made during a medical referral sought merely to obtain evidence of criminal conduct. See *People v Shaw*, 315 Mich App 668, 675; 892 NW2d 15 (2016); see also *People v Kosters*, 175 Mich App 748, 771; 438 NW2d 651 (1989) (MCDONALD, J., dissenting) (agreeing with the majority's conclusion that hearsay statements did not fall within the scope of MRE 803(4) because the purpose of the medical referral was to gather evidence of criminal conduct rather than obtain a diagnosis or treatment). This Court's reasoning in *Shaw* is instructive. In *Shaw*, seven years after the sexual abuse allegedly occurred, the police referred the victim for a medical examination – incidentally, with Dr. Guertin – in connection with the criminal investigation. *Shaw*, 315 Mich App at 675. This Court held that Dr. Guertin's testimony regarding the victim's statements made during the exam were inadmissible because they were not made for the purpose of medical treatment. *Id*. Specifically, the Court reasoned:

> First, the examination by Guertin did not occur until seven years after the last alleged instance of abuse, thereby minimizing the likelihood that the complainant required treatment. Second, the complainant did not seek out Guertin for gynecological services. Rather, she was specifically referred to Guertin by the police in conjunction with the police investigation into the allegations of abuse by defendant. And during the seven years since the last alleged incident of abuse, she had seen a different physician, who was not called as a witness, for gynecological care. [*Id*.]

The factual circumstances of the present case are virtually identical to those at issue in *Shaw*. Here, the victim was referred to Dr. Guertin by the police in connection with their investigation of alleged sexual abuse. Dr. Guertin, in turn, directed his examination report, which lacked any formal diagnosis, back to the police. Dr. Guertin was not the victim's regular family physician; rather, Dr. David Luginbill, who also testified at trial, had treated the victim for her entire life. The victim alleges that the abuse first occurred in 2004, when she was five years old, and continued until 2008, when she was nine years old. Dr. Guertin examined the victim in October 2012, eight years after the alleged abuse began and four years after the victim reports the last instance occurred. Because of the amount of time that had passed between the alleged abuse and the victim's medical exam, Dr. Guertin's physical findings were fairly normal, and all appreciable findings could be readily attributed to an ordinary cause, i.e., one other than sexual abuse. Although Dr. Guertin tested the victim for sexually transmitted diseases, he did not suggest any further treatment, including psychological treatment. In fact, Dr. Guertin admitted that he should have referred the victim for psychological treatment but neglected to do so.

The exception under MRE 803(4) permits the admission of hearsay statements only when those statements are made for the purpose of either medical treatment or medical diagnosis in connection with treatment. This exception is premised on the notion that such statements are

inherently trustworthy because it is in the declarant's interest to be truthful in order to receive appropriate medical care. *Mahone*, 294 Mich App at 214-215. In the present case, however, the victim was examined by Dr. Guertin not for the purpose of medical treatment but rather at the behest of the police in furtherance of the criminal investigation, thereby undercutting the basis for the hearsay exception. This conclusion is further supported by the fact that Dr. Guertin found no medical "injury,"[1] rendered no treatment, and made no formal diagnosis. Accordingly, it cannot be said that the victim's statements to Dr. Guertin were inherently reliable. As in *Shaw*, these circumstances indicate that the victim's statements to Dr. Guertin were made for the purpose of obtaining evidence rather than medical treatment.

The majority distinguishes the present case from *Shaw* on the ground that Dr. Luginbill did not historically provide the same type of treatment as Dr. Guertin, as Dr. Luginbill never tested the victim for sexually transmitted diseases or performed a gynecological exam. However, had Dr. Luginbill been made aware of any sexual abuse or activity, he likely would have provided such treatment. The majority also distinguishes *Shaw* on the ground that, at the time Dr. Guertin, a pediatrician, performed the medical examination in that case, the victim was a 23-year-old adult woman. See *Shaw*, 315 Mich App at 689 (GLEICHER, J., concurring). In contrast, the victim in the present case was a 13-year-old minor at the time of the medical examination, rendering consultation with a pediatrician appropriate. Though certainly a factual distinction between the cases, the majority in *Shaw* did not rely on Dr. Guertin's specialty in pediatric care as a basis for concluding that the referral was not for the purpose of medical treatment. Rather, the factors discussed above served as a sufficient basis justifying the Court's conclusion. Accordingly, I would find that the rationale and outcome reached in *Shaw* are controlling under the present circumstances, thereby rendering Dr. Guertin's testimony regarding the victim's statements inadmissible hearsay.

Having determined that Dr. Guertin's testimony concerning the victim's statements amounted to inadmissible hearsay, I would further hold that the trial court's admission of this testimony constitutes harmful error requiring a new trial. Under MCL 769.26, the improper admission or rejection of evidence is grounds for granting a new trial or setting aside a verdict only when failure to do so would result in a miscarriage of justice. See also MCR 6.431. Reversal of a conviction is thus appropriate if the error undermined the reliability of the verdict such that "it is more probable than not that a different outcome would have resulted without the error." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). The defendant bears the burden of showing that the error resulted in a miscarriage of justice, *People v Hawthorne*, 474 Mich 174, 181; 713 NW2d 724 (2006), and "[i]n making this determination, the reviewing

---

[1] Dr. Guertin testified that he found no medical injury because the last alleged instance of sexual abuse occurred four years before he examined the victim. However, were MRE 803(4) broad enough to permit admission of the hearsay statements under the circumstances of the present case, the prosecution would presumably be able to introduce a victim's hearsay statements simply by referring the victim to an expert physician, perhaps even in cases not involving sexual assault.

-3-

court should focus on the nature of the error in light of the weight and strength of the untainted evidence." *People v Elston*, 462 Mich 751, 766; 614 NW2d 595 (2000).

Given the factual similarities between the two cases, this Court's analysis in *Shaw* is again enlightening with respect to whether the evidentiary error affected the outcome of trial.[2] In *Shaw*, as a result of the lack of objective evidence, the case "turned largely on the [victim's] credibility." *Shaw*, 315 Mich App at 677. The victim's narrative regarding the alleged abuse was repeated by multiple other witnesses, including Dr. Guertin. *Id*. The Court found that, by emphasizing the consistency of the victim's allegations by reference to this hearsay, the prosecutor had improperly bolstered the victim's credibility. *Id*. With respect to Dr. Guertin's and the investigating detective's testimony, the Court further found that "the hearsay was offered with what amounted to an official stamp of approval." *Id*. Although Dr. Guertin testified that the victim's medical history was consistent with sexual abuse, the Court noted that his physical findings were "ambiguous at best," as explanations other than sexual abuse were equally plausible. *Id*. at 678. Because Dr. Guertin's opinion was therefore premised entirely on the victim's hearsay statements, the Court concluded that the testimony was significantly prejudicial such that it affected the outcome of the trial. *Id*.

In the absence of physical evidence, significant circumstantial evidence, or witnesses to the alleged abuse, the outcome of the present case was similarly contingent on the victim's credibility. During trial, Dr. Guertin recounted his examination of the victim and her description to him of the alleged sexual abuse, statements that were consistent with the victim's testimony at trial. The jury thus heard the victim's version of events twice, once through the victim's own testimony and once through the testimony of an examining physician. Indeed, in the absence of any significant physical findings, treatment, or diagnosis, it would appear that the prosecution's sole purpose in presenting Dr. Guertin's testimony was to recount and bolster the victim's hearsay statements. In cases highly dependent on credibility assessments, "an expert will often represent [to the jury] the only seemingly objective source, offering it a much sought-after hook on which to hang its hat." *People v Beckley*, 434 Mich 691, 722; 456 NW2d 391 (1990). Thus, Dr. Guertin's mere repetition of the victim's account gave the appearance of an official or objective endorsement of her allegations, thereby tipping the scales in favor of the prosecution.

This error was further compounded by Dr. Guertin's opinion testimony that, based on the victim's history, he believed she was sexually abused. As in *Shaw*, Dr. Guertin's conclusion was premised exclusively on the victim's self-reported account of the events, given that his findings upon physical examination were ambiguous. Indeed, he admitted that his physical examination was fairly normal, noting no findings that were unequivocally indicative of sexual abuse. Yet, Dr. Guertin not only concluded that a sexual assault had occurred but also necessarily suggested that the victim's statements were credible. Michigan law is clear that an expert may not vouch

---

[2] In *Shaw*, the Court evaluated defendant's claim that counsel provided ineffective assistance by failing to object to several witnesses' hearsay testimony. *Shaw*, 315 Mich at 672. However, as in the present case, the ultimate inquiry contemplated whether the outcome of the case would have differed had the objectionable testimony been excluded. *Id*. at 678.

for the veracity of a victim. *People v Peterson*, 450 Mich 349, 352; 537 NW2d 857 (1995). Further, an examining physician may not give an opinion on whether a sexual assault has occurred unless that opinion is based on physical findings and medical history, as opposed to the physician's opinion that the victim was being truthful. *People v Smith*, 425 Mich 98, 112-113; 387 NW2d 814 (1986).

Although the trial court delivered a jury instruction striking that portion of Dr. Guertin's testimony concluding that the victim had been sexually assaulted, this limiting instruction did not address Dr. Guertin's testimony repeating the victim's description of the alleged abuse. Nor did the limiting instruction expressly clarify that no part of Dr. Guertin's testimony should be considered as evidence that the victim's allegations were credible. The prejudicial effect of this testimony therefore was not adequately cured through the limiting instruction. In a case in which the outcome hinged almost entirely on the victim's credibility, Dr. Guertin's mere repetition of her account as fact more likely than not affected the outcome of trial. Coupled with his endorsement of the victim's credibility, this error became even more highly prejudicial, resulting in a miscarriage of justice.

The majority holds that defense counsel's questioning "opened the door" to the possibility that Dr. Guertin would respond in a negative or damaging way. See *Beckley*, 434 Mich at 731 ("Defendant cannot now complain that the expert's testimony served to vouch for the complainant's credibility when he allowed and in fact drew out the response."). I disagree, and would find that Dr. Guertin provided unresponsive, narrative answers that went beyond the scope of defense counsel's questioning. Defense counsel questioned Dr. Guertin regarding the lack of diagnosis in his examination report in an effort to underscore that he was not providing medical treatment. Dr. Guertin's responses went beyond the scope of defense counsel's questions, and at times he interrupted defense counsel before a question was asked:

> *Defense Counsel*: Dr. Guertin, if this report was then provided to a psychologist or a social worker, they're reading it – another professional, they're reading it, and they're like where's the diagnosis.

> *Dr. Guertin*: Well, there's not a statement there that says "diagnosis: sexual abuse." If you read this report and read the content of this report and what we discussed, *in my opinion there would be no question that she's been sexually abused*. And I feel that way now, and I felt that way then.

> *Defense Counsel*: There's no specific diagnosis victim of sexual abuse. But you never say anything in your report, victim of sexual abuse. Despite a diagnosis, you say nothing in your report that she's a victim of sexual abuse. Now what's your –

> *Dr. Guertin*: The entire report tends to say that she's a victim of sexual abuse. In fact, it says how it happened. It says the period of years in which it happened, gives the implication of almost how many times it happened. . . .

> It is true that there's not a line that says "diagnosis: sexual abuse." But if you are asking my opinion, and if you read this, *I think it should be clear that this*

*document supports that she was sexually abused.  And based on her history to me,
I believe that she was.*

Dr. Guertin's testimony was therefore unresponsive to the questions, which simply sought to confirm that the report did not make a diagnosis of sexual abuse, but did not call for speculation regarding whether the victim's history was credible or that sexual abuse had occurred.

Accordingly, I would find that the trial court's admission of Dr. Guertin's testimony regarding statements made to him by the victim constitutes reversible error warranting remand for a new trial.


/s/ Michael F. Gadola