*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JEFFREY TRAVIS TOENSFELDT,

        Defendant-Appellant.

UNPUBLISHED
October 15, 2020

No. 347705
Oscoda Circuit Court
LC No. 17-001523-FC

Before: MURRAY, C.J., and CAVANAGH and CAMERON, JJ.

PER CURIAM.

A jury convicted defendant, Jeffrey Travis Toensfeldt, of four counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) and (2)(b); three counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) and (2)(b); gross indecency, MCL 750.338b; and indecent exposure, MCL 750.335a. The trial court, applying a fourth-offense habitual offender enhancement under MCL 769.12, sentenced defendant to 365 days in jail for indecent exposure and to eight concurrent terms of 47½ to 75 years in prison for the remaining convictions. Defendant appeals as of right, and we affirm.

Defendant's convictions arose from the repeated sexual assault of his daughter, HM, when she was approximately three to seven years old. HM testified about penile-vaginal penetration, penile-anal penetration, and bruising on her thighs caused by defendant's penis. MO, a family friend, provided graphic testimony of seeing HM with a swollen and bloody vagina and anus after returning from a visitation with defendant when HM was four years old. HM's mother, MK, testified that she first learned of the abuse in 2011, that Child Protective Services (CPS) did not help her at that time,[1] and that HM spoke about the abuse again in March of 2013 or 2014, immediately before MK moved to Florida. HM lived with defendant from March until June, while MK was in Florida. MK retrieved HM from defendant's house in June of 2013 or 2014 and moved her to Florida, and MK reported the offenses after she and HM moved back to Michigan in 2016.

---

[1] A CPS worker testified at trial and admitted to deficiencies in how the 2011 investigation was conducted. For example, HM was not physically examined.

The evidence of defendant's sexual abuse of HM was buttressed by evidence that defendant had (1) sexually penetrated, with his penis, another girl, TL, when she was six or seven years old; (2) sexually assaulted another of his daughters, IT, when she was less than two years old; and (3) displayed pornography prominently in his home in the presence of HM. Defendant testified at trial and claimed that the allegations against him had been fabricated because of a custody dispute with HM's mother.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first raises an issue regarding the sufficiency of the evidence presented at trial. "This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction." *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014). In reviewing a sufficiency-of-the-evidence argument, this Court "review[s] the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution had proved the crime's elements beyond a reasonable doubt." *Id*. This Court may take into account reasonable inferences from the evidence. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Defendant does not contest on appeal that there was sufficient evidence for the jury to convict him of two counts of CSC-I (for one instance of penile-vaginal penetration and one instance of penile-anal penetration), of one count of CSC-II (for one instance of defendant's bruising HM's thighs with his penis), and for gross indecency and indecent exposure. The only issue he raises is whether two additional instances of CSC-I and two additional instances of CSC-II were adequately supported by the evidence. He contends that these four additional convictions must be vacated because of insufficient evidence.

However, defense counsel, in the course of making a motion for a partial directed verdict, affirmatively conceded at the conclusion of the prosecutor's case that the evidence was sufficient for all four counts of CSC-I. As such, the present issue has been waived as applied to CSC-I. *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000). In essence, counsel "affirmatively approved" that the prosecutor had presented sufficient evidence of four counts of CSC-I. *Id*. at 216; see also, *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (counsel waived error in jury instructions that omitted an element of the offense). And unlike in *People v Eisen*, 296 Mich App 326, 329-330; 820 NW2d 229 (2012), defendant does not make a concurrent claim of ineffective assistance of counsel with regard to this issue.

We nevertheless note that the evidence presented by the prosecutor was, in fact, sufficient to support four convictions of CSC-I, as well as three convictions of CSC-II.

CSC-I as charged involved a person aged 17 or older engaging in sexual penetration with a person under the age of 13.[2] MCL 750.520b(1)(a) and (2)(b). "Sexual penetration" means "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight,

---

[2] It is not in dispute that defendant was over the age of 17 and that HM was under the age of 13 at the time of the alleged acts.

of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r).

CSC-II as charged involved a person aged 17 or older engaging in sexual contact with a person under the age of 13. MCL 750.520a(q) defines "sexual contact," in relevant part, as including "the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, [or] done for a sexual purpose[.]"

Defendant argues that HM could not remember the specific details of more than two penetrations, but HM clearly testified about ongoing abuse that happened many times. When speaking of the penile-vaginal penetration, HM spoke of defendant penetrating her "front private," and then mentioned "that" happening another time. This was evidence of two penile-vaginal penetrations. When speaking of the penile-anal penetration, HM said, "[H]e . . . *would do* the same movements, and it would be pretty much the same [as the penile-vaginal penetration], just lying on my belly instead." As noted, HM testified that sexual abuse would occur "a couple of times every couple of weeks" at defendant's house on Cherry Creek Road. Clearly, HM was speaking of multiple instances of penile-anal penetration. Given all the testimony, at least two instances of penile-vaginal and at least two instances of penile-anal penetration were proven.

As for CSC-II, HM testified that she remembered getting red marks from the bad things that defendant did to her, and said that she showed them to her mother. These marks were inflicted at the house on Cherry Creek Road. She said, "There would be marks on my thighs. There would be like rubbing marks. And they would be red usually." According to HM, these marks were from "[defendant]'s private." The prosecutor asked, "And did you always get those after he would do the bad things to you, or only sometimes?" She answered, "Only sometimes," and said that the marks hurt. This testimony was evidence of at least two sexual touchings of HM thighs with defendant's penis. See MCL 750.520a(q).[3]

## II. TESTIMONY ABOUT DEFENDANT'S CREDIBILITY

Defendant contends that the admission of testimony by Michigan State Police Detective Sergeant Timothy Hellin regarding defendant's credibility during a police interview was reversible error. Alternatively, defendant contends that his attorney was ineffective for failing to object to the testimony. Though the same facts form the basis of both arguments, we address them under

---

[3] In addition, HM's testimony also described abuse at a prior house, when HM was younger. The prosecutor asked about other types of abuse, aside from sexual abuse, from defendant, and HM testified that when defendant lived in the different house "by the park, the only thing I remember him doing *other than that* was him spanking me repeatedly." (Emphasis added.) The "that" was clearly a reference to sexual abuse. Moreover, MK testified about HM's statement in 2011 that defendant was "touching" her. All the testimony, viewed together, supported at least one additional charge of sexual touching, beyond the touching of defendant's penis to HM thighs.

the separate tests applicable for each argument. *People v Randolph*, 502 Mich 1, 5; 917 NW2d 249 (2018).

Unpreserved issues are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Under the plain-error doctrine, reversal is warranted if a "clear or obvious" error occurred that "affected the outcome of the lower court proceedings." *Id*. And even if this standard is satisfied,

an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*Id*. at 763-764 (citation, quotation marks, and brackets omitted).]

As for the issue of ineffective assistance of counsel, in *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000), this Court stated:

In order to preserve the issue of effective assistance of counsel for appellate review, the defendant should make a motion in the trial court for a new trial or for an evidentiary hearing. Failure to move for a new trial or for a *Ginther*[4] hearing ordinarily precludes review of the issue unless the appellate record contains sufficient detail to support the defendant's claim. If review of the record does not support the defendant's claims, he has effectively waived the issue of effective assistance of counsel. Defendant failed to move for a new trial or file a motion for a *Ginther* hearing. Therefore, our review is limited to the appellate record. If the appellate record does not support defendant's assertions, he has waived the issue. [Citations omitted.]

Defendant did not file a motion for a new trial, and although he did seek a remand in this Court to develop the record regarding ineffective assistance of counsel, the motion was denied, *People v Toensfeldt*, unpublished order of the Court of Appeals, entered October 21, 2019 (Docket No. 347705), and we decline to revisit this decision. Review is limited to the existing record.

To obtain relief on the basis of ineffective assistance of counsel, a party "must show that counsel's performance fell short of [an] . . . objective standard of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the . . . trial would have been different." *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015) (quotation marks, citation, and brackets omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citation omitted).[5]

On appeal, defendant is challenging Detective Sergeant Hellin's testimony that defendant's denial was "weak," and that defendant was not a "100 percent truthful individual." "It is generally

---

[4] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

[5] The standards of review for unpreserved issues and for ineffective assistance of counsel as set forth in part II of this opinion apply equally to parts III and IV of this opinion.

improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury." *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). Nevertheless, defendant has not established entitlement to relief under the plain-error doctrine. First, Detective Sergeant Hellin's statement that "[t]hat weak denial, no, was an admission to his not, yes [sic]" did not clearly convey an opinion about defendant's truthfulness, and his other statements about a "weak denial" must be read in context. On direct examination, Detective Sergeant Hellin testified:

> One additional discussion that I had asked that we had talked about, how truthful are you being with me? How honest? Give me a number. Because truthfulness is very subjective. I said anywhere between zero, everything that you've told me today is a lie; one hundred percent was the ground truth. Give me a number where you're at. He paused briefly, stated somewhere between 80 and 90 percent. Paused for several other seconds, and then stated no, I'm being 100.

Defendant does not challenge *this* testimony on appeal. Accordingly, the jury heard that *defendant himself admitted* to being only partially truthful in speaking with the officer.[6] Given the serious charges being leveled against him, evidence that defendant initially admitted to being "between 80 and 90 percent" was likely more significant to the jury than was the testimony challenged on appeal. Viewed through this lens, we do not find a clear, obvious, and outcome-determinative error, see *Carines*, 460 Mich at 763, with regard to the admission of Detective Sergeant Hellin's testimony about a weak denial and about the lack of 100% truthfulness.

Similarly, even assuming, arguendo, that it fell below an objective standard of reasonableness for counsel to refrain from objecting when the officer first mentioned a "weak denial" or when he mentioned a lack of 100% truthfulness, there is no reasonable probability that the outcome of the trial would have differed if counsel had objected, *Ackley*, 497 Mich at 389, as the jury already heard defendant's admission that he was not being entirely truthful. Moreover, in *Dobek*, 274 Mich App at 71, a police officer testified that he had "no concerns about lying" by the victim, and we stated that, "[g]iven that [the officer] was called as a witness by the prosecutor and that a criminal prosecution against defendant was pursued, the jurors surely understood that [the officer] believed that the victim was telling the truth even without the disputed testimony." *Id*. Similarly, given that Detective Sergeant Hellin was called as a witness by the prosecutor and a criminal prosecution against defendant was pursued, the jurors surely understood that the officer disbelieved defendant's denials. Under all the circumstances, defendant has not established ineffective assistance of counsel in connection with the officer's testimony.

## III. DISPLAY OF PORNOGRAPHY

Defendant contends that evidence of pornography in his home was improperly admitted, and that his attorney was ineffective for failing to object to the evidence.

---

[6] During defendant's own testimony, he was asked, "What were you being 80 to 90 percent truthful about?" Defendant replied, "Everything [Detective Sergeant Hellin] was asking me."

MK testified that when she picked up HM from defendant's house in June of 2013 or 2014, she saw that there were "posters of naked women doing inappropriate things all over the wall." In addition, MK testified that there were "Playboy magazines on the floor and on top of the counter." MK testified that she told HM not to look at "that."

Only relevant evidence is admissible. MRE 402. Relevant evidence is evidence having any tendency to make the existence of a fact of consequence more or less probable. MRE 401. Defendant incorrectly contends that the evidence was not relevant, as the evidence was highly relevant. That defendant prominently displayed pornography to his *six or seven year old* daughter made it more likely that he was introducing her to sex. It made it more likely that he committed the crimes.

Defendant contends that even if the testimony was otherwise admissible, it should have been excluded under MRE 403. Under this rule, otherwise admissible evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice[.]" MRE 403. MRE 403 only prohibits evidence that is *unfairly* prejudicial. *People v Feezel*, 486 Mich 184, 198; 783 NW2d 67 (2010). This unfairness arises if there is a danger that marginally probative evidence will be given undue weight by the jury. *Id*. Evidence is "probative" if it makes the existence of a consequential fact more probable than it would be without the evidence. *Id*. at 197. The evidence was not marginally probative; it was highly probative. And as for defendant's argument that it was likely to inflame the jury, they had already heard graphic testimony of defendant's sexual abuse of not only HM, but also IT and TL. Viewed through this lens, that defendant prominently displayed adult pornography was hardly so inflammatory that MRE 403 precluded its admission. The testimony by MK that defendant displayed pornography was admissible, and counsel was not required to make a futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).[7]

MO testified that HM told her about the posters. This testimony was inadmissible hearsay. " '[H]earsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is not admissible except as provided by the court rules. MRE 802. However, any error was not outcome-determinative. *Carines*, 460 Mich at 763. In *People v Rodriquez*, 216 Mich App 329, 332; 549 NW2d 359 (1996), we discussed improperly admitted evidence and then stated:

> However, we hold that the erroneous admission of this evidence was harmless. The erroneous admission of evidence is harmless if it did not prejudice the defendant. The teachers testified about prior statements of the complainant. Because the complainant testified about the alleged sexual abuse at trial, the

---

[7] We reject defendant's argument that MRE 608 rendered the evidence inadmissible. The pornography evidence from MK was introduced before defendant's testimony, and was not introduced to show that defendant was a liar or had a certain type of character; it was introduced to show that he was blatantly displaying pornography to and thereby introducing sex to a very young girl.

teachers' testimony only reiterated the complainant's testimony that she had been abused. Because the teacher's [sic] testimony was mere cumulative evidence, we hold that the admission of this testimony did not prejudice defendant. [*Id*. (citation omitted.]

MO's testimony was cumulative to the testimony of MK, and therefore no prejudice resulted from admission of the hearsay. In addition, there is no reasonable probability that the outcome of the trial would have been different had defense counsel objected to MO's testimony. *Ackley*, 497 Mich at 389.

## IV. OUT-OF COURT STATEMENTS BY HM

Defendant also contends that testimony by Dr. Lindsey McMorrow, by MK, by MO, and by social worker Laura Kauffman about out-of-court statements made by HM were inadmissible hearsay. He contends that admission of the testimony was not harmless, and once again alleges that his trial counsel rendered ineffective assistance by failing to object to it.

## A. DR. McMORROW

Next, defendant challenges Dr. McMorrow's testimony that HM told her that defendant had tried to and did put his private parts into her private parts, that it hurt, that something "gooey and green" came out of defendant's private parts, and that "things like this" happened "a lot of times."

MRE 803(4) states that the following are not excluded by the hearsay rule:

Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment.

In *People v Mahone*, 294 Mich App 208, 214-215; 816 NW2d 436 (2011), this Court indicated that "[s]tatements made for the purpose of medical treatment are admissible pursuant to MRE 803(4) if they were reasonably necessary for diagnosis and treatment if the declarant had a self-interested motivation to be truthful in order to receive proper medical care." "This is true irrespective of whether the declarant sustained any immediately apparent physical injury." *Id*. at 215. Significantly, we stated:

Particularly in cases of sexual assault, in which the injuries may be latent, such as contracting sexually transmitted diseases or psychological in nature, and thus not necessarily physically manifested at all, *a victim's complete history and a recitation of the totality of the circumstances of the assault* are properly considered to be statements made for medical treatment. Thus, statements the victim made to the nurse were all properly admissible pursuant to MRE 803(4). [*Id*. (citation omitted; emphasis added).]

-7-

In light of *Mahone*, the admission of Dr. McMorrow's testimony was not a clear or obvious error. *Carines*, 460 Mich at 763. Dr. McMorrow, in fact, specifically testified that her discussions with possible sexual-assault victims are solely for the purposes of treatment.

Defendant contends that the statements to Dr. McMorrow were not admissible because the court did not make any findings regarding their reliability. See, generally, *People v Meeboer*, 439 Mich 310; 484 NW2d 621 (1992). Defendant contends that this lack of findings rendered the statements inadmissible, but the trial court was not *asked* to make any findings regarding their reliability. Thus, contrary to defendant's argument, no plain error is apparent with regard to the bald fact that the trial court did not make any such findings. *Carines*, 460 Mich at 763. To the extent that defendant is attempting to argue that counsel should have asked the trial court to make such findings, or that the court should have undertaken the analysis sua sponte, defendant does not clarify how or why this would have led to exclusion of the testimony. He does not indicate what factors made the statements unreliable, nor does he argue that they *were* unreliable; he simply contends that the lack of findings regarding reliability rendered the statements inadmissible. As such, he has not demonstrated plain error or that counsel's inaction affected the outcome of the trial. *Id.*; *Ackley*, 497 Mich at 389. No error requiring reversal is apparent regarding the admission of the challenged testimony by Dr. McMorrow.

B. MK

Defendant, in addressing the alleged hearsay testimony by MK, does not make any specific references to MK's testimony or cite the relevant portions of the record. An appellant may not leave it up to this Court to unravel his arguments for him. MCR 7.212(C)(7) (indicating that an appellant must provide citations to the lower court record in support of his or her arguments). At any rate, that much of MK's testimony about HM's statements was likely admissible under MRE 803A because it conveyed the first statements of various instances of abuse.

C. MO

Defendant also asserts error in the admission of MO's testimony that, when HM was refusing to change into a bathing suit to go swimming, she told MO that her "dad was hurting [her]." MO added, "I didn't go into details with her."

Assuming the erroneous admission of this testimony, the plain error must be prejudicial. *Carines*, 460 Mich at 763. And again, in *Rodriquez*, 216 Mich App at 332, the Court discussed improperly admitted evidence and then stated:

> However, we hold that the erroneous admission of this evidence was harmless. The erroneous admission of evidence is harmless if it did not prejudice the defendant. The teachers testified about prior statements of the complainant. Because the complainant testified about the alleged sexual abuse at trial, the teachers' testimony only reiterated the complainant's testimony that she had been abused. Because the teacher's [sic] testimony was mere cumulative evidence, we hold that the admission of this testimony did not prejudice defendant. [*Id.* (citation omitted.]

In light of HM's testimony, and the substantial amount of other evidence lending credence to it—such as the vivid testimony regarding the abuse of IT, the testimony of TL regarding defendant's abuse of her, the testimony about HM's behavioral issues and refusal to change into a swimsuit, and the observation of vaginal and anal trauma to HM—MO's vague and nonspecific testimony about HM's being "hurt"—even assuming, arguendo, that it was improper—did not affect the outcome of the case. *Carines*, 460 Mich at 763; *Ackley*, 497 Mich at 389. No plain error or ineffective assistance of counsel is apparent.

## D. KAUFFMAN

Kauffman testified on direct examination that HM had reported being "inappropriately sexually either touched or attempted [sic]" when she was three years old. The testimony by Kauffman that defendant is challenging, however, was elicited by defense counsel on cross-examination. Kauffman testified about meeting HM for counseling sessions, and defendant's attorney asked, "Did you hear [HM] say anything specific about [defendant]?" Kauffman replied, "She referred to him as her biological father. And she referred to him as at three years old she was sexually abused by him." Counsel then asked, "She didn't make any mention about being sexually abused after she was three years old?" Kauffman replied, "I did not follow up on the length of time for that, so that's what I have recorded." We conclude that defendant has not established any plain error or ineffective assistance of counsel with regard to Kauffman's testimony because counsel's elicitation of it appears to have been a matter of trial strategy. When Kauffman testified, the jury had just heard incriminating testimony from MO about observing HM, at four years old, with a bloody and swollen vagina and a bloody and swollen "rear end," and about HM "covering her breasts and her vagina at four years old." This testimony, viewed through the lens of HM's and MK's testimony, was likely damaging to the defense case with regard to the abuse that occurred when HM was very young, i.e., three or four years old.

Decisions regarding how to question witnesses are presumed to be matters of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Defendant has not overcome this presumption because counsel, faced with the testimony about HM's bloody genital area, was likely trying to demonstrate that even if something may have occurred earlier, the testimony about later abuse was unsubstantiated by any physical observations and was manufactured.[8] Indeed, the implication from counsel's questioning was that it was strange for HM to have been seeing Kauffman for therapy from 2016 through 2018, but to have failed to mention more recent instances of sexual abuse aside from that occurring when she was three years old. No outcome-determinative plain error or ineffective assistance of counsel has been established in connection with defense counsel's questioning of Kauffman. *Carines*, 460 Mich at 763-764; *Ackley*, 497 Mich at 389.

At any rate, Kauffman's mention of what HM did tell her—i.e., about the abuse at three years of age—was not outcome-determinative in light of the testimony by HM, MK, and MO, and the bolstering evidence of defendant's abuse of TL and IT.

---

[8] Counsel noted in closing arguments that Dr. McMorrow had found no physical evidence of abuse.

## V. SENTENCING

Defendant admits that his sentence[9] of 47½ to 75 years in prison was within the appropriate guidelines range, but argues that this Court should nevertheless remand for resentencing because the sentence was unreasonable. But MCL 769.34(10) states, in pertinent part, "If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence." Defendant does not contend that any scoring errors occurred or that the trial court relied on any inaccurate information during sentencing. In *People v Schrauben*, 314 Mich App 181, 196 n 1; 886 NW2d 173 (2016), we specifically stated that "*Lockridge*[10] did not alter or diminish MCL 769.34(10)[.]" See also, *People v Anderson*, 322 Mich App 622, 636; 912 NW2d 607 (2018). Both *Schrauben* and *Anderson* are binding on this Court. As such, defendant's argument is without merit.[11]

## VI. CLERICAL ERROR

Defendant lastly argues that the judgment of sentence contains a clerical error that must be corrected because it states that defendant was sentenced to 47½ to 75 years in prison for indecent exposure, when in actuality he was sentenced to 365 days in jail for that offense.

The court sentenced defendant to eight terms of 47½ to 75 years in prison for four counts of CSC-I, three counts of CSC-II, and one count of gross indecency. The judgment of sentence being appealed properly reflects this. The court sentenced defendant to 365 days in jail for indecent exposure, with credit for 365 days served. The judgment of sentence being appealed, with the label "commitment to the Department of Corrections" at the top, does not mention this conviction and sentence for indecent exposure because defendant was not being committed to the Department of Corrections for that offense. The lower court file contains a separate judgment of sentence, with the label "commitment to jail" at the top, reflecting the correct jail term for indecent exposure. The premise of defendant's appellate argument—i.e., that the judgment of sentence inaccurately reflects that he was sentenced to 47½ to 75 years in prison for indecent exposure—is faulty and does not require any appellate relief.

---

[9] Defendant received multiple prison sentences, of course, but they are all to be served concurrently.

[10] *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

[11] We note that defendant's arguments about reasonableness are without any merit. Specifically, defendant argues that his crimes "are not serious in the scheme of offenses of this nature," yet defendant repeatedly abused his own young daughter by, among other things, repeatedly penetrating her vagina and anus with his penis. We cannot conceive what defendant might view as a more serious offense "in the scheme of offenses of this nature."

Affirmed.

/s/ Christopher M. Murray
/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron