*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHAD ANTHONY JOHNSON,

        Defendant-Appellant.

UNPUBLISHED
January 7, 2021

No. 349442
Livingston Circuit Court
LC No. 18-024891-FC

Before: BOONSTRA, P.J., and GADOLA and TUKEL, JJ.

PER CURIAM.

Defendant was convicted by a jury of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(f) (personal injury to victim and force or coercion), and was sentenced to serve 53 months to 15 years' imprisonment. Defendant appeals by right. We affirm defendant's conviction, vacate his sentence, and remand for resentencing.

## I. FACTUAL BACKGROUND

DP and defendant were friends and had known each other about one year as of February 14, 2018. At 1:30 a.m. that morning, defendant told DP that he intended to go to the casino. DP invited defendant to her house so he could see some of the art that she had recently made. DP, defendant, and DP's blind housemate talked in the garage for a time before DP went inside the house; DP was in her bedroom while her young son slept on the floor when defendant appeared in her bedroom. Defendant climbed on DP's bed, grabbed DP, forced her shirt and sweatshirt up over her head, and pulled her yoga pants and underwear down around her ankles. Defendant then simultaneously bit DP's breasts and jammed his fingers into her vagina. DP told defendant to stop and that he was hurting her, but he bit harder until she was screaming. At that point, DP's son stood up and shouted, which distracted defendant and allowed DP to get away from defendant. DP told defendant that he needed to leave, and she eventually drove him to a nearby McDonalds. Defendant was subsequently arrested at the McDonalds.

A sexual assault nurse examiner documented that DP had a bruise and abrasion on one breast, but no signs of vaginal trauma. The nurse also took swabs of DP's breasts and vulva, which

-1-

both indicated the presence of male DNA. The male DNA found on DP's breast matched defendant, but there was not enough DNA found on her vulva to create a profile.

Defendant was charged with one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(f) (personal injury to victim and force or coercion), for digital penetration and one count of CSC-II for DP's injured breast. Following a jury trial, the jury found defendant not guilty of CSC-I and guilty of CSC-II.

## II. DNA EVIDENCE

Defendant argues that the trial court erred in allowing the prosecutor to present evidence that the DNA of an unknown male was discovered from DP's vaginal swab, in order to show penetration. We conclude that the issue is moot and, therefore, decline to consider it.

A case is moot if it seeks "a judgment upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a then existing controversy," or presents "nothing but abstract questions of law which do not rest upon existing facts or rights." *People v Richmond*, 486 Mich 29, 34-35; 782 NW2d 187 (2010). Defendant was acquitted of the CSC-I charge involving penetration and the crime he was convicted of, CSC-II, does not include penetration as an element. See MCL 750.520c. As such, the contested DNA evidence was only relevant to the crime defendant was acquitted of and, thus the issue is moot. See *Richmond*, 486 Mich at 34-35. Furthermore, defendant's trial attorney consented to the admission of this evidence at trial so the issue is waived. See *People v Gonzalez*, 256 Mich App 212, 224; 663 NW2d 499 (2003), disapproved in part on other grounds 469 Mich 967 (2003) (citation and quotation marks omitted) ("Because error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence, defendant has waived appellate review of this issue."). Thus, we decline to address this issue on the merits.

## III. DEFENDANT'S CRIMINAL HISTORY

Defendant argues that the trial court erred by allowing DP to testify about his criminal history. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

To preserve an issue regarding a trial court's evidentiary ruling, a defendant must raise that issue in the trial court and raise the same basis for objection on appeal. *People v Gaines*, 306 Mich App 289, 306; 856 NW2d 222 (2014). Defendant failed to object to DP's testimony at trial. Thus, the issue is unpreserved.

Unpreserved issues are reviewed for plain error. *People v Cain*, 498 Mich 108, 116; 869 NW2d 829 (2015).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden

of persuasion with respect to prejudice. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (quotation marks, citations, and brackets omitted).]

"A 'clear or obvious' error under the second prong is one that is not 'subject to reasonable dispute.' " *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018).

## B. ANALYSIS

At trial, the prosecutor asked DP why she felt comfortable inviting defendant into her home. DP answered:

> Because we had been friends. And we, we talked, we would talk and um, and when I met him, he was sober and, and had talked to me about how and there was something that had happened in his past and he was on probation and he needed to be sober and um, that—

The prosecutor immediately changed the subject, defense counsel did not object to the statement, and defendant's probationary status was not brought up again.

Defendant argues that the introduction of DP's statement was unfair surprise because the prosecutor did not provide notice of intent to use evidence of defendant's prior bad acts as required under MRE 404(b)(2). But the prosecutor did not introduce evidence of defendant's prior criminal record; rather, DP's testimony was an unresponsive answer.

As a general rule, "an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995). An unresponsive answer is one that provides information not requested. *People v Mahone*, 294 Mich App 208, 213; 816 NW2d 436 (2011). Additionally, an unresponsive answer is only deemed prejudicial error if the unresponsive answer is egregious or cannot be amended with a curative instruction. *Id*. DP's unresponsive answer in which she mentioned that defendant was on probation was not egregious. DP mentioned that defendant was on probation in connection with her concern regarding the fact that he was drinking the night of the assault. She did not specify what defendant was on probation for and the issue was not brought up again. Furthermore, any prejudice could certainly have been addressed through a curative jury instruction. As such, even assuming DP's nonresponsive testimony constituted error, it certainly did not rise to the level of plain error affecting substantial rights.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he is entitled to a *Ginther*[1] hearing to develop the record to show that his trial counsel was ineffective for failing to object to the introduction of the DNA evidence from the vaginal swab and DP's testimony regarding defendant's probationary status. We disagree.

## A. STANDARD OF REVIEW

Regardless of whether a claim of ineffective assistance is properly preserved, if the trial court did not hold a *Ginther* hearing, "our review is limited to the facts on the record." *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). "A claim of ineffective assistance of counsel is a mixed question of law and fact. A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008).

## B. ANALYSIS

A "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

> Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. To establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. [*People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012) (citations omitted).]

The "reasonable probability" standard can be satisfied by less than a preponderance of the evidence. *People v Trakhtenberg*, 493 Mich 38, 56; 826 NW2d 136 (2012).

The "reviewing court must not evaluate counsel's decisions with the benefit of hindsight," but should "ensure that counsel's actions provided the defendant with the modicum of representation" constitutionally required. *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004), citing *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). Defense counsel may decide, for example, "not to object to an obvious error" for "strategic reasons." *Randolph*, 502 Mich at 12. Thus, there is a "strong presumption that trial counsel's performance was strategic," and "[w]e will not substitute our judgment for that of counsel on matters of trial strategy." *Unger*, 278 Mich App at 242-243.

---

[1] *People v Ginther*, 390 Mich 436, 442-443; 212 NW2d 922 (1973).

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. [*Strickland*, 466 US at 689 (citation omitted).]

"Yet a court cannot insulate the review of counsel's performance by calling it trial strategy." *Trakhtenberg*, 493 Mich at 52. "The inquiry into whether counsel's performance was reasonable is an objective one and requires the reviewing court to determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks and citation omitted). Accordingly, the reviewing court must consider the range of potential reasons that counsel might have had for acting as he or she did. *Id*.

Furthermore, with regard to prejudice, as noted, to obtain a new trial on ineffective assistance grounds, a defendant must show that "there is a reasonable probability that, but for counsel's errors, a different outcome would have resulted." *People v Jackson*, 292 Mich App 583, 600-601; 808 NW2d 541 (2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Chenault*, 495 Mich 142, 150-151; 845 NW2d 731 (2014). (quotation marks and citation omitted). To meet this standard, a defendant does not have to show that the evidence would have ensured acquittal, *id.*, nor is a defendant even required to show that counsel's failure more likely than not altered the outcome, *Harrington v Richter*, 562 US 86, 112; 131 S Ct 770; 178 L Ed 2d 624 (2011). Nevertheless, "[t]he likelihood of a different result must be substantial, not just conceivable." *Id.* "[W]here there is relatively little evidence to support a guilty verdict to begin with (e.g., the uncorroborated testimony of a single witness), the magnitude of errors necessary for a finding of prejudice will be less than where there is greater evidence of guilt." *Trakhtenberg*, 493 Mich at 56.

Finally, the purpose of a *Ginther* hearing is to provide a defendant an opportunity to establish facts or produce evidence to help establish an ineffective assistance of counsel claim. *Hoag*, 460 Mich at 6. But a defendant is not entitled to a *Ginther* hearing if further factual development will not advance his or her claim. *People v Chapo*, 283 Mich App 360, 369; 770 NW2d 68 (2009).

## 1. DNA EVIDENCE

Defendant argues that his trial counsel was ineffective for failing to object to the introduction of the unidentified male DNA found in DP's vaginal swab. At trial, defendant's trial counsel actually used this evidence to defendant's advantage, arguing that because the DNA profile did not conclusively match defendant's DNA, there was no proof that defendant penetrated DP. Not only was this a reasonable trial strategy, it was apparently effective because defendant was acquitted of the CSC-I charge involving penetration. Thus, defendant has not shown that his trial counsel was ineffective. Furthermore, defendant has not established how he was prejudiced

by the admission of this evidence because it was not relevant to his CSC-II conviction and was only relevant to his CSC-I charge, of which defendant was acquitted. Finally, further factual development is not necessary to address this issue so remand for a *Ginther* hearing on this issue is unnecessary.

## 2. DEFENDANT'S CRIMINAL HISTORY

Defendant argues that his trial counsel was ineffective for failing to object to DP's testimony that defendant was on probation. But a reasonable defense strategy can include choosing to not object to a statement to avoid drawing the jury's attention to an improper comment. See, e.g., *People v Horn*, 279 Mich App 31, 40; 755 NW2d 212 (2008). In this case, it was a reasonable trial strategy for defense counsel to avoid drawing the jury's attention to the fact that defendant was on probation, particularly given that the comment was only fleetingly made and not further emphasized during the trial. Thus, defendant has not shown that his trial counsel lacked a reasonable strategy in choosing to not object. Furthermore, defendant was not prejudiced by DP's unresponsive testimony because it is highly unlikely that such testimony, in the circumstances of this case, could have changed the outcome of trial. Finally, further factual development is not necessary to address this issue so remand for a *Ginther* hearing on this issue is unnecessary.

## V. SENTENCING BASED ON ACQUITTED CONDUCT

Defendant argues that the trial court improperly scored OV 11 (Criminal Sexual Penetration), in light of his conviction of CSC-II, which does not have an element of penetration, and his acquittal of CSC-I, which does have such an element. Defendant seeks either a resentencing on the basis of *People v Beck*, 504 Mich 605; 939 NW2d 213 (2019), cert den *Michigan v Beck*, ___ US ___; 140 S Ct 1243; 206 L Ed 2d 240 (2020), decided after his sentencing; or at a minimum a remand pursuant to *United States v Crosby*, 397 F3d 103 (CA 2, 2005); see *People v Lockridge*, 498 Mich 358, 395-399; 870 NW2d 502 (2015). Defendant in fact objected in the trial court on the ground that acquitted conduct could not properly be used for sentencing purposes, anticipating the Supreme Court's ruling in *Beck*.[2] Even if defendant had not objected to the use of his acquitted conduct at sentencing, however, a new rule of criminal procedure is necessarily applicable to all cases pending when the new rule is recognized. See *Teague v Lane*, 489 US 288; 109 S Ct 1060; 103 L Ed 2d 334 (1989).

> "[A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." Deciding whether a rule is "new" requires a court to determine "whether 'a state court considering [the defendant's] claim at the time his conviction became final would have felt *compelled* by existing precedent to conclude that the rule [he] seeks was required by the Constitution.' " [*People v Barnes*, 502 Mich 265, 269-270; 917

---

[2] We in no way fault the trial court for relying on acquitted conduct for purposes of sentencing, as such was the prevailing practice prior to *Beck*, a point which was acknowledged by defense counsel at sentencing.

NW2d 577, 581 (2018) (citations omitted; emphasis and alterations in original), cert den *Barnes v Michigan*, ___ US ___; 139 S Ct 1556; 203 L Ed 2d 723 (2019).]

*Beck* is such a new rule. According to the *Beck* Court, its analysis clearly was not compelled by existing precedent; indeed, a significant question before the Court in *Beck* was whether the rule the majority set down was *precluded* by the then-existing state of the law. See *Beck*, 504 Mich at 625 (finding that existing precedent did not control and the Court, therefore, was free to "address this question on a clean slate.").

The holding in *Beck* is quite straightforward: "[D]ue process bars sentencing courts from finding by a preponderance of the evidence that a defendant engaged in conduct of which he was acquitted." *Id* at 629. In this case, therefore, the trial court's scoring of OV 11, which was based on conduct of which defendant was acquitted, was erroneous, as the prosecution, to its credit, forthrightly admits in its brief on appeal.

There is no basis for a *Crosby* remand. A *Crosby* remand addresses the situation in which a sentencing court treated the sentencing guidelines as mandatory, which is a Sixth Amendment violation. See *Lockridge*, 498 Mich at 397 ("[I]n cases in which a defendant's minimum sentence was established by application of the sentencing guidelines in a manner that violated the Sixth Amendment, the case should be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error."). The *Beck* analysis involves a due process violation, which implicates the Fourteenth Amendment, not the Sixth. Consequently, we vacate defendant's sentence, and remand for the trial court to resentence defendant.

## VI. CONCLUSION

We find no possibility of prejudicial error in the conduct of defendant's trial, and we thus affirm his conviction. For the reasons stated, defendant's sentence is vacated, and the case remanded for resentencing.

We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Jonathan Tukel

-7-